WALKER ET AL., APPELLEES, *v.* LOCKLAND CITY SCHOOL DISTRICT BOARD OF EDUCATION ET AL., APPELLANTS.

(No. C-780772—Decided May 28, 1980.)

*Condit & Dressing Co., L.P.A.,* and *Mr. John W. Dressing,* for appellees.

*Messrs. Ennis & Roberts* and *Mr. George E. Roberts, III,* for appellants.

*Per Curiam.* Defendants-appellants, the Lockland Board of Education and the five board members, appeal from the trial court's order permanently enjoining the Lockland Board of Education from refusing to accept, as tuition students, the minor plaintiffs, Kimberly Walker and Kathy Woods, and ordering it to allow Kimberly and Kathy to continue in the Lockland schools until they graduate from high school or choose to attend a school in another district. Defendants assign five errors.

The main issue raised by this appeal is whether the district superintendent can enter into an oral contract binding on the school board, when the board has not authorized the contract pursuant to R. C. 3313.33 and 121.22. Other issues are whether the board was estopped and whether it had ratified its superintendent's representations. Because we find as a matter of law that there was no contract, no estoppel, and no ratification, we reverse.

The uncontradicted evidence is as follows. The girls both

live outside the Lockland district. Sometime just before the 1974-75 school year, the Lockland superintendent of schools told the girls' parents, in separate conversations, the conditions under which their daughters would be accepted as tuition students in the Lockland district. He further told them that should their daughters apply and be accepted, they would be allowed to continue as tuition students until graduation so long as they did not violate these conditions. He based this latter representation on statements made to him by various individual board members. On September 17, 1974, the board formally adopted a tuition policy for non-resident students,[1] and later, in its meeting, accepted Kimberly and Kathy as tuition students "for the 1974-75 school year." The girls continued as tuition students for school years 1975-76, 1976-77, and 1977-78, although the board took no action to formally accept them for any of these subsequent years. In February of 1978, the board formally revised its tuition policy, stating that "tuition students will not be accepted for enrollment in the Lockland City School District effective with the beginning of the 1978-79 school year."[2] The revision contained no grand-

---

[1] The resolution states in full as follows:

"It was moved by Mr. Brown and seconded by Mr. Morari to accept the Superintendent's recommendation and adopt the following policy for the acceptance of non-resident students on a tuition basis:

"1. Student must be in good standing academically.

"2. Student must have suitable attendance record.

"3. Student must not have been a behavior problem.

"4. Lockland schools must have space available at the grade level of the student.

"5. No tuition student will be accepted if such acceptance will worsen the black/white ratio by [sic] the district of residence of the student.

"Ayes: Apke, Brown, Morari, President Noble (4).

"Absent: Kelly (1)."

[2] The resolution states in full as follows:

"The following tuition policy was presented for the second reading:

"TUITION POLICY

"Because of the necessity of significantly increasing the cost of tuition for students residing outside the District beginning with the 1978-79 school year and the problems related to collecting said tuition, it shall be the policy of the Lockland City School District Board of Education that tuition students will not be accepted for enrollment in the Lockland City School District effective with the beginning of the 1978-79 school year.

"It was moved by Mr. Herrin and seconded by Mr. Harlow to accept the above Tui-

father clause. The plaintiffs filed the instant suit for a permanent injunction, which the trial court granted on November 17, 1978.

Defendants' first assignment of error is that the court erred in finding that a contract existed between the school board and the plaintiffs. The assignment has merit. R. C. 3313.33 states, in part, that "***[n]o contract shall be binding upon any board [of education] unless it is made or authorized at a regular or special meeting of such board." Additionally, R. C. 121.22(H) states, in part, that "[a] resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body.***" There was no meeting at which the board contracted with the plaintiffs concerning any school year, other than 1974-75. The representations of the superintendent, even if based on conversations with individual board members do not, as a matter of law, meet the statutory requirements quoted above. See *State, ex rel. Steinbeck,* v. *Treasurer of Liberty Township* (1871), 22 Ohio St. 144.

Defendants' second assignment of error, alleging that there was no estoppel, and their third assignment of error, alleging that there was no ratification, have merit for the same reason. The board of education is a creature of statute, and may be estopped only by the action of the board itself, not by the action of persons who have no power to act in this area on its behalf. See *Bd. of Edn.* v. *Sinton* (1885), 41 Ohio St. 504, 512; *Welch* v. *Lima* (1950), 89 Ohio App. 457, 468. Similarly, the board did not ratify the superintendent's representations in a manner comporting with the requirements of R. C. 3313.33 and 121.22(H).

Given our conclusions regarding the first three assignments of error, we decline to pass on the now academic question raised in the fourth assignment of error concerning the court's consideration of material not in evidence.

The fifth assignment of error is characterized by the defendants as a "summary" assignment; it attacks the grant of the permanent injunction. Its lack of merit is subsumed under our conclusions about the first three assignments of error.

---

tion Policy as a revision of the Lockland Board of Education Policy Handbook, to replace Article VIII, Section 3, Paragraph 'B'.

"Ayes: Harlow, Herrin, Robinson, President Brown (4).

"Noes: Ward (1)."

30

We reverse the judgment below and dissolve the injunction heretofore issued. Rendering the judgment the trial court should have rendered, we dismiss the complaint.

*Judgment accordingly.*

SHANNON, P. J., CASTLE and BLACK, JJ., concur.