WOLF, APPELLANT, *v.* CUYAHOGA FALLS CITY SCHOOL DISTRICT BOARD OF EDUCATION ET AL., APPELLEES.

[Cite as Wolf *v.* Cuyahoga Falls City School Dist. Bd. of Edn. (1990), 52 Ohio St. 3d 222.]

(No. 89-944—Submitted May 9, 1990—Decided July 11, 1990.)

*Green, Haines, Sgambati, Murphy & Macala Co., L.P.A., Ronald G. Macala* and *Anne Piero Silagy,* for appellant.

*Whalen & Compton Co., L.P.A., G. Frederick Compton, Jr., R. Brent Minney* and *Karrie M. Kalail,* for appellees.

ALICE ROBIE RESNICK, J. Appellant asserts that she had a binding oral agreement with appellees regarding a promise to a duty-free period. She basically contends that Rump, as an agent of the school board, entered into an enforceable agreement with her by promising to give her a duty-free period in exchange for her promise to teach journalism classes and be the newspaper advisor. Appellant claims that Rump promised her a duty-free period as long as she remained journalism teacher and newspaper advisor, whereas Rump maintains that he only agreed to give her a duty-free period for the 1983-1984 school year.

Regardless of the factual dispute concerning whether the duty-free period was for only one year or for a longer term, appellant's first argument must fail for other reasons.

A principal has no authority to bind a school board to a contract. School boards are creations of statute and have no more authority than what has been conferred on them by statute or what is clearly implied therefrom.

See *Marion Local School Dist. Bd. of Edn.* v. *Marion Cty. Bd. of Edn.* (1958), 167 Ohio St. 543, 545, 5 O. O. 2d 216, 217, 150 N.E. 2d 407, 409; *CADO Business Systems of Ohio, Inc.* v. *Cleveland City School Dist. Bd. of Edn.* (1983), 8 Ohio App. 3d 385, 387, 8 OBR 499, 502, 457 N.E. 2d 939, 942.

R.C. 3313.33 provides in pertinent part that "* * * [n]o contract shall be binding upon any board unless it is made or authorized at a regular or special meeting of such board." It has been held that a board of education must act as a body and not as individuals. Thus, for example, a contract, signed by members of a board individually but later repudiated by a board as a corporate body at a separate meeting, is not a valid or binding contract. See *State, ex rel. Steinbeck,* v. *Treasurer of Liberty Twp.* (1871), 22 Ohio St. 144, 148-149. See, also, *CADO Business Systems of Ohio, Inc., supra.*

In *Walker* v. *Lockland City School Dist. Bd. of Edn.* (1980), 69 Ohio App. 2d 27, 23 O.O. 3d 24, 429 N.E. 2d 1179, the issue was whether a superintendent could enter into an oral contract with students' parents which would be binding on the school board when the board had not authorized the contract pursuant to R.C. 3313.33 and 121.22(H).[1] The court held that the superintendent could not bind the board. "* * * The representations of the superintendent, even if based on conversations with individual board members do not, as a matter of law, meet the statutory requirements quoted above. See *State, ex rel. Steinbeck,* v. *Treasurer of Liberty Township* (1871), 22 Ohio St. 144." *Walker, supra,* at 29, 23 O.O. 3d at 26,

429 N.E. 2d at 1181. See, also, *Brownfield, Bowen, Bally & Sturtz* v. *Bd. of Edn.* (1978), 56 Ohio App. 2d 10, 10 O. O. 3d 20, 381 N.E. 2d 207.

The record discloses no evidence that the board acted upon or even knew of any purported agreement between appellant and Rump. Thus in the absence of any evidence that the board authorized the oral contract allegedly entered into between Rump and appellant, we do not find the existence of a binding contract between appellant and appellee board.

Appellant next contends that because of the additional duties she performs as newspaper advisor, she is entitled to a supplemental limited contract pursuant to R.C. 3319.08. Appellant testified that she spends five to ten hours per week working solely on publishing the newspaper. This extra time is in addition to time spent in the classroom and time spent outside the classroom preparing lesson plans. Appellant stated that these additional hours, which are needed in order to publish the newspaper, are spent editing copy from the students, editing proofs from the typesetter, delivering copy to the printer, picking up proofs from the printer, and delivering the final copy to the printer for printing. Rump does not dispute the fact that appellant does spend extra time on the newspaper.

Appellees counter that appellant is not entitled to a supplemental contract because her position as newspaper advisor is an integral part of the journalism class curriculum. They further contend that the granting of supplemental contracts is entirely within the school board's discretion and cite *Ballard* v. *Goshen Local School Dist.*

---

[1] R.C. 121.22(H) states in part: "* * * A resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body."

*Bd. of Edn.* (1984), 13 Ohio App. 3d 439, 13 OBR 528, 469 N.E. 2d 951, in support.

We find, however, that the facts in *Ballard* are distinguishable from those in the instant case. In *Ballard,* it appears that the negotiated agreement entered into between the teachers association and the board of education intended to set forth the board's policy of requiring teachers to perform "extracurricular" duties as part of their regular teaching duties. See *id.* at 440, 13 OBR at 529, 469 N.E. 2d at 951. The court thus stated, "* * *in view of the policy of the board which clearly requires the teachers to perform duties other than in the classroom, *without any reference to additional compensation,* we find nothing to support appellants' claim [regarding mandatory issuance of supplemental contracts]." (Emphasis added.) *Id.* at 442, 13 OBR at 531, 469 N.E. 2d at 954.

In the instant case, however, the negotiated agreement between the board and the teachers' association sets forth a provision allowing compensation for additional services.

"[Article VI] C. *Compensation for Additional services*:

"In every school system there are certain positions which require people filling these positions to begin work before the school term starts, to continue work after the school term ends, to work during the time schools are closed for holidays, to work longer hours than one should reasonably expect of the regular teacher, and to carry additional responsibilities. It is probably impossible to correctly evaluate such services, but most school systems do attempt to make some adjustment either by extra compensation, decreased teaching load, or by a combination of both. The following schedules are an attempt to give recognition to positions wherein one or more of the above situations affect the position."

Subsections 2 and 3 of section C above designate specific positions entitled to additional services contracts. These positions include, but are not limited to, head football and basketball coaches, cheerleading advisor, and teacher of double grades. The other subsection, subsection 1, is general in scope and is entitled "Extra Curricular Activities." Instead of naming specific positions for which teachers are entitled to supplemental contracts, this subsection describes in broad general terms who would qualify for an additional services contract based on their extracurricular activities. This subsection clearly manifests the board's intention to compensate teachers who perform additional duties:

"1. *Extra Curricular Activities:*

"a. The contract day covers the period from 8:00 A.M. to 3:30 P.M., or 7:50 A.M. to 3:20 P.M. of each day scheduled for service. Some services will be required to be performed outside the normal contract day and are recognized as additional service. These services which will be compensated and the criteria to be applied to determine the rate of compensation follow. * * *"

The criteria used to determine the rate of compensation are arranged in groups according to levels of difficulty and responsibility.

At the hearing, Rump testified that several teachers in the high school receive additional services contracts pursuant to this general "Extra Curricular Activities" subsection. Positions entitling teachers to such contracts include, but are not limited to, French Club and Latin Club advisors and yearbook advisors. These positions are not specifically mentioned under subsection 1 or anywhere else in the agreement.

Appellant argues that once it is shown that a board has authorized, in general, supplemental contracts for some teachers who perform additional services, then it must grant such contracts for all teachers performing additional services. We find support for appellant's argument in R.C. 3319.08:

"* * * The board of education of each city * * * school district that authorizes compensation in addition to the base salary stated in the teachers' salary schedule for the performance of duties by a teacher which are in addition to the teacher's regular teaching duties, *shall* enter into a supplemental written contract with each teacher who is to perform additional duties.* * *" (Emphasis added.)

In the instant case, the board has authorized compensation and other benefits for duties performed in addition to a teacher's regular teaching duties. Appellant performs duties in addition to her regular duties. Hence, the language of R.C. 3319.08 becomes mandatory upon the school board and it *shall* issue a supplemental contract to appellant. The school board abuses its discretion when it arbitrarily or capriciously selects some teachers who perform extra duties for additional compensation while neglecting others who also perform additional duties. The yearbook advisor is given an extra-duty contract for performing additional services relating to a class for which course credit is given. The record here evinces that although appellant is required to perform many duties in addition to her classroom work, such as going to the printer and proofreading copy, she was not given a supplemental contract.

We emphasize that a school board has discretion in deciding whether to award supplemental contracts pursuant to R.C. 3319.08. 1958 Ohio Atty. Gen. Ops. No. 3145. Such discretion will not be interfered with by a court absent an abuse of discretion. See *State, ex rel. Ohio High School Athletic Assn.*, v. *Judges of the Court of Common Pleas of Stark Cty.* (1962), 173 Ohio St. 239, 245-246, 19 O.O. 2d 52, 56, 181 N.E. 2d 261, 265. See, also, 1952 Ohio Atty. Gen. Ops. No. 1080 ("As to the second question of whether particular duties described are proper ones to be compensated, that question must be answered in the first instance by the board of education. The board's decision on such a question can be upset only if it has abused its discretion by providing pay for an activity that has no reasonable connection with a proper school system. [*Id.* at 13.]") However, in view of the particular circumstances of this case, we find that the board did indeed abuse its discretion in not issuing appellant a supplemental contract. The board authorized the issuance of such contracts, in general, and the record clearly supports the fact that several teachers, performing extracurricular activities, have received supplemental contracts. To deny a supplemental contract to appellant who performs extracurricular duties as newspaper advisor is an abuse of discretion.

For the foregoing reasons, the decision of the court of appeals is reversed. Appellant was entitled to a separate supplemental limited contract for the position of newspaper advisor and an award of appropriate compensation pursuant to that contract.

*Judgment reversed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.