NATIONWIDE AGRIBUSINESS
INSURANCE COMPANY,
Plaintiff–Appellant,

v.

Earl ROSHONG, et al., Defendants–
Appellees.

No. 01–4009.

United States Court of Appeals,
Sixth Circuit.

Sept. 5, 2002.

Before MERRITT, SUHRHEINRICH, and GILMAN, Circuit Judges.

AMENDED OPINION

GILMAN, Circuit Judge.

Janet Bowser and Earl Roshong were involved in separate automobile accidents while employed by their respective public school districts in Ohio. Bowser was killed and Roshong was severely injured. Richard Bowser, as executor of Janet Bowser's estate, and Roshong subsequently filed insurance claims pursuant to the identical uninsured/underinsured motorist (UM/UIM) provisions in the applicable school districts' automobile liability policies, both of which were issued by Nationwide Agribusiness Insurance Company (Nationwide). Nationwide denied the claims, and then sued in federal district court for a judgment declaring that neither Janet Bowser nor Roshong were covered by the UM/UIM provision at the time of their accidents. Both Richard Bowser and Roshong counterclaimed for a declaratory judgment to establish their right to recover the UM/UIM benefits. The district court subsequently granted summary judgment in favor of Richard Bowser and Roshong. For the reasons set forth below, we **REVERSE** the judgment of the district court.

## I. BACKGROUND

Janet Bowser was employed by the Ostego Local School District (OLSD) when she was killed in an automobile accident in September of 1999. Nationwide had issued an automobile liability policy to the OLSD that was in effect on the date of the accident. Although Janet Bowser was not acting within the scope of her employment when the accident occurred, Richard Bowser, her husband and the executor of her estate, filed a claim pursuant to the UM/UIM provision in the OLSD's policy. Nationwide denied the claim.

Roshong filed a similar claim with Nationwide after he was severely injured in an automobile accident in April of 2000, at which time he was employed by the Toledo City School District (TCSD). Nationwide had issued an automobile liability policy to the TCSD that was in effect when Roshong's accident occurred, and that policy contained the same UM/UIM provision as the one in the OLSD's policy. Roshong, who also was not acting within the scope of his employment at the time of his accident, sought benefits under this provision. Nationwide denied his claim as well.

In July of 2000, Nationwide brought a declaratory judgment action in federal district court against Richard Bowser and Roshong, with jurisdiction based upon diversity of citizenship. It sought a judgment declaring that it had properly denied their claims. Richard Bowser and Roshong both counterclaimed for a declaratory judgment to the contrary. All three parties then filed motions for summary judgment. Relying upon the Ohio Supreme Court's interpretation of an identical UM/UIM provision in *Scott–Pontzer v. Liberty Mutual Fire Insurance Company*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999), the district court concluded that Richard Bowser and Roshong were entitled to benefits under the provision in the school districts'

policies. The court therefore granted summary judgment to Richard Bowser and Roshong, while denying Nationwide's mirror-image motion. This timely appeal followed.

## II. ANALYSIS

To resolve the present case, we must decide whether Janet Bowser and Roshong were covered by the UM/UIM provision in question. This is a purely legal question, because the facts underlying this coverage issue are undisputed. Such being the case, we review de novo the district court's coverage determination. *United Nat'l Ins. Co. v. SST Fitness Corp.*, 182 F.3d 447, 449 (6th Cir.1999) ("Under Ohio law, the construction of an insurance contract is a matter of law for the court.").

Coverage under the UM/UIM provision at issue is limited to an "insured," a term defined in the provision as follows:

B. Who Is An Insured

1. You.

2. If you are an individual, any "family member."

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another insured.

Richard Bowser and Roshong concede that the definition of an insured in subsections 2, 3, and 4 is inapplicable to their claims. But they contend that subsection 1 provides coverage to Janet Bowser and Roshong.

As used in subsection 1, the term "You" is defined as only the named insured, which in this case is either the OLSD or the TCSD. The Ohio Supreme Court, however, has adopted a more expansive interpretation of this term where the named insured is not an individual. In *Scott–Pontzer v. Liberty Mutual Fire Insurance Company*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999), the court held that, where the named insured is a corporation, the term "You" in a UM/UIM provision applies to the employees of that corporation. The court so held after determining that the term "You" was ambiguous, and therefore must be construed "strictly against the insurer." *Id.* at 1119 (quoting *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380 (1988) (Syllabus)). It pointed out that Ohio law requires all automobile liability policies issued in the state to include UM/UIM coverage in order "to protect persons," and thus "[i]t would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot ... suffer bodily injury or death ...." *Id.* Furthermore, the court concluded that, absent a specific limitation or exclusion in the UM/UIM provision, the employees were entitled to UM/UIM coverage even when not acting within the scope of their employment. *Id.* at 1120, 85 Ohio St.3d 660.

Richard Bowser and Roshong rely upon *Scott–Pontzer* in seeking to recover UM/UIM benefits. They contend that the term "You" in the UM/UIM provision must be construed to include employees of the OLSD and the TCSD because the school districts are not individuals. In addition, they point out that the UM/UIM provision contains no language that limits coverage to only those employees who are acting within the scope of their employment, so that, pursuant to *Scott–Pontzer*, the provision covered Janet Bowser and Roshong even though they were not acting

on behalf of their employers when the accidents occurred.

Nationwide maintains, however, that *Scott–Pontzer* is distinguishable from the present case because, unlike the private corporation that was the named insured in *Scott–Pontzer*, the OLSD and the TCSD are public school districts. According to Nationwide, the state of Ohio does not give a public school district the authority to obtain UM/UIM coverage that insures its employees when the employees are acting outside the scope of their employment. Nationwide thus contends that the courts may not construe the UM/UIM provision at issue to provide coverage that the OLSD and the TCSD allegedly had no authority to obtain.

In interpreting the insurance contract at issue, we apply the substantive law of Ohio and follow, where applicable, the decisions of the Ohio Supreme Court. *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir.2000). The Ohio Supreme Court, however, has not yet decided whether its decision in *Scott–Pontzer* is applicable where the named insured is a school district. We must therefore "ascertain from all available data, including state appellate court judgments, the applicable state law." *Kelso v. Noble*, 162 F.3d 1161, —— (6th Cir.1998) (unpublished table decision) (citing *Ray Indus. v. Liberty Mut. Ins. Co.*, 974 F.2d 754, 758 (6th Cir.1992)).

Only two of the twelve districts of the Ohio Court of Appeals have considered the application of *Scott–Pontzer* to school district insurance policies: *Allen v. Johnson*, Nos. 01CA0046, 01CA0047, 2002 WL 1065872, at * 6 (Ohio Ct.App. May 22, 2002), and *Mizen v. Utica Nat'l Ins. Group*, 147 Ohio App.3d 274, 770 N.E.2d 97, 101 (Ohio Ct.App.2002), *appeal not allowed*, 95 Ohio St.3d 1438, 766 N.E.2d 1003 (2002). Both courts concluded that *Scott–Pontzer* applied to a UM/UIM provision in

an insurance contract purchased by a school district. We may not disregard the decision of a state intermediate appellate court when deciding a diversity action unless we are "convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. AT & T Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940). For the reasons set forth below, we are so convinced in the case before us.

In *Allen*, the court relied upon *Scott–Pontzer* in concluding that the UM/UIM provision covered school-district employees even when they act beyond the scope of their employment. But the court did not decide whether the school district had the authority to purchase the UM/UIM coverage at issue. Instead, the court reasoned that a "challenge to the school district's legal authority to enter into these insurance contracts would be a defense to enforcement of the contract; it has no bearing on the construction of its terms." *Allen*, 2002 WL 1065872, at * 6.

The *Allen* court, however, failed to recognize that the two issues are not separable. If the UM/UIM provision in question is void because the school district lacked the authority to provide such coverage to employees acting outside the scope of their employment, then obviously such coverage would not be available to the injured employees. In the present case, therefore, we must consider whether interpreting the UM/UIM provision at issue in the manner set forth in *Scott–Pontzer* would render the provision void. *Allen*'s failure to do so leaves us unpersuaded that the Ohio Supreme Court would adopt its holding.

The *Mizen* court, on the other hand, recognized that the applicability of *Scott–Pontzer* turned on whether a school district has the authority to purchase UM/UIM coverage for employees acting outside the scope of their duties. In the

*Mizen* court's view, a school district court may purchase such broad UM/UIM coverage because no Ohio statute explicitly precludes it from doing so. *Mizen,* 147 Ohio App.3d 274, 770 N.E.2d 97, 101.

■ But we do not believe that the Ohio Supreme Court is any more likely to adopt the holding in *Mizen* than the holding in *Allen,* because the court in *Mizen* failed to recognize the statutory limitations on the contractual authority of school districts. Ohio law makes clear that the board of education for a public school district may enter into a contract only as authorized by statute. *Wolf v. Cuyahoga Falls City Sch. Dist. Bd. of Educ.,* 52 Ohio St.3d 222, 556 N.E.2d 511, 513 (1990) ("School boards are creations of statute and have no more authority than what has been conferred on them by statute or what is clearly implied therefrom."); *CADO Bus. Sys. of Ohio, Inc. v. Bd. of Educ. of Cleveland City Sch. Dist.,* 8 Ohio App.3d 385, 457 N.E.2d 939, 942 (1983) (determining that the authority of boards of education "to act is derived from and strictly limited to that granted them by statute"). As the Ohio Court of Appeals for the Fourth District explained in *Brownfield, Bowen, Bally and Sturtz v. Board of Education,* 56 Ohio App.2d 10, 381 N.E.2d 207, 208 (1977):

> Ohio boards of education are purely creations of statute. Their authority to act is derived from and strictly limited to powers that are clearly and expressly granted to them by statute, or clearly therefrom implied by necessity. *Their powers are strictly construed with any actions taken beyond the clear provisions of the law being void.*

(Emphasis added); *Bell v. N. Ohio Tel. Co.,* 149 Ohio St. 157, 78 N.E.2d 42, 43 (1948) ("In order to state a cause of action for damages for the breach of a contract with a public utility, plaintiff's petition must state facts which show that such contract is one into which the public utility had the power to enter.").

■ Accordingly, the question is not whether a statute forbids a school district from purchasing UM/UIM coverage on behalf of employees acting beyond the scope of their duties. The relevant inquiry is instead whether a statute specifically provides a school district with authority to obtain such coverage. To date, neither the Ohio Supreme Court nor any district of the Ohio Court of Appeals has addressed this question.

Richard Bowser and Roshong, however, maintain that the Ohio Supreme Court's recent decision to not review *Mizen* on appeal signals the highest court's agreement with the holding reached in that case. But the Ohio Supreme Court will grant a discretionary appeal only if the appeal "involves a felony or a question of public or great general interest . . . ." Ohio Sup.Ct. Rule II, Sec. 1(A)(3). Because insurance companies have presumably revised their recent policies to avoid any ambiguity in the definition of an insured, and because the Ohio General Assembly has abrogated the *Scott–Pontzer* decision in future cases, Ohio Rev.Code § 3937.18, as amended by S.B. 97 (effective Oct. 31, 2001), the scope of the case has become of less public importance. The Ohio Supreme Court's decision to deny a discretionary appeal in *Mizen* is therefore at least as likely to reflect the limited public interest in the case as to indicate approval of its reasoning.

On the other hand, five Ohio trial courts have analyzed the precise issue before us. Three of these courts have concluded that a school district lacks the statutory authority to purchase UM/UIM coverage for employees acting outside the scope of their duties. *Burden v. Hall,* No. 01CVH 01–280 (Ohio Ct.C.P. Feb. 28, 2002); *Alatsis v. Nationwide Ins. Enter.,* No. 00CVH08–7432 (Ohio Ct.C.P. July 30, 2001); *Allen v.*

*Johnson,* No. 99–CV–0270 (Ohio Ct.C.P. August 21, 2001), *rev'd on other grounds,* Nos. 01CA0046, 01CA0047, 2002 WL 1065872, at *6 (Ohio Ct.App. May 22, 2002). Two trial courts have reached the opposite conclusion. *Roberts v. Wausau Bus. Ins. Co.,* No. 99CVC12–10958 (Ohio Ct.C.P. May 1, 2001); *Congrove v. Wausau Ins. Cos.,* No.2000–CI–006 (Ohio Ct. C.P. October 2, 2000). Unfortunately, none of these trial-court decisions engage in a full analysis of the issue, and they are thus not particularly persuasive one way or the other. We are thus left with the task of determining whether the applicable statutes permit a school district to insure its employees even when they act beyond the scope of their employment.

Richard Bowser and Roshong contend that Ohio Revised Code § 3313.201(A) authorizes a school district, through its board of education, to obtain UM/UIM coverage without any limitation on the scope of that coverage. Section 3313.201(A) provides in pertinent part as follows:

> The board of education of each school district shall procure a policy or policies of insurance insuring ... employees ... of the school district against liability on account of damage or injury to persons and property, ... including liability on account of death or accident by wrongful act, occasioned by the operation of a motor vehicle ... owned or operated by the school district. Each board of education may supplement the policy or policies of insurance with ... uninsured motorists insurance.

According to Richard Bowser and Roshong, the last sentence of this statute gives a board of education unbridled discretion to determine the scope of UM/UIM insurance provided on behalf of its employees.

As an initial matter, we note that § 3313.201(A) makes no mention of UIM coverage, but instead authorizes a school board to purchase only UM coverage. The parties dispute whether the reference to UM coverage in the statute should be construed to include UIM coverage. We need not resolve this issue, however, because even assuming that the statute allows a school board to purchase both UM and UIM coverage, we do not believe that it gives a board unlimited discretion to do so. To conclude otherwise, we would have to read the last sentence of § 3313.201(A) in isolation. The Ohio Supreme Court has made clear, however, that "a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body." *State ex rel. Thompson v. Spon,* 83 Ohio St.3d 551, 700 N.E.2d 1281, 1283 (1998) (per curiam) (quoting *State v. Wilson,* 77 Ohio St.3d 334, 673 N.E.2d 1347, 1350 (1997)). We believe that, read as a whole, the most reasonable interpretation of § 3313.201(A) allows boards of education to purchase UM (and perhaps) UIM coverage only as additional insurance protection for employees while driving "a motor vehicle ... owned or operated by the school district." Ohio Rev.Code § 3313.201(A).

But Richard Bowser and Roshong maintain that such an interpretation of § 3313.201(A) is unreasonable in light of the Ohio Supreme Court's decision in *Martin v. Midwestern Group Insurance Company,* 70 Ohio St.3d 478, 639 N.E.2d 438, 441 (1994), where the court held that UM/UIM coverage "was designed by the General Assembly to protect persons, not vehicles," and that a UM/UIM provision may not therefore condition coverage on an insured driving a particular vehicle. *Martin,* however, was superceded by the General Assembly's revision of Ohio's UM/UIM law in 1997, nearly two years before Nationwide issued the policies to the OLSD and the TCSD. *Baughman v. State*

*Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 727 N.E.2d 1265, 1270 (2000) (recognizing that the decision in *Martin* was superceded by the General Assembly's enactment of Am. Sub. H.B. 261, effective in September of 1997). With this revision, Ohio law no longer prohibits an employer from providing UM/UIM coverage to its employees only when they are driving an employer-owned vehicle. *Lawler v. Fireman's Fund Ins. Co.*, 163 F.Supp.2d 841, 852 (N.D.Ohio 2001) (pointing out that the General Assembly amended Ohio Rev. Code § 3937.18 in 1997 "to make clear that motor vehicle liability policies can condition [UM/UIM] coverage"). Richard Bowser and Roshong's reliance upon *Martin* and its progeny is therefore misplaced.

The dissent nevertheless contends that we have construed § 3313.201(A) "as narrowly and rigidly as possible in order to protect insurance companies from a liability that they wrote into their own policies." Dis. Op. at 280. We respectfully disagree. Our determination that § 3313.201(A) does not permit a school district to purchase UIM coverage is based upon the absence of any mention of UIM coverage in the statute. Declining to create from whole cloth the authority to purchase UIM coverage does not constitute an unduly strict construction of § 3313.201(A). Nor have we given the statute a wooden reading by refusing to disregard the statutory language that, in our view, is most reasonably construed as limiting the purposes for which a school district may purchase UM coverage. Moreover, the dissent's implication that Nationwide had even the foggiest idea that its insurance policies provided coverage for school-district employees acting outside the scope of their employment is belied by the Ohio legislature's override of *Scott–Pontzer* in October of 2001. Ohio Rev.Code § 3937.18.

Based on all of the above, we do not believe that the Ohio Supreme Court would apply its holding in *Scott–Pontzer* to the present case, because to do so would be contrary to the unbroken line of Ohio cases holding that actions taken by school boards in excess of their statutory authority are void. In our view, the court would instead construe the disputed provision as providing UM/UIM coverage to employees while they drive a vehicle owned or operated by the school district, an interpretation that would not invalidate the entire provision. *Miller v. Ratterman*, 47 Ohio St. 141, 24 N.E. 496, 502 (1890) (holding that "where a contract is susceptible of two constructions, one of which would make it legal and valid, and the other illegal or invalid, preference will be given to the former, and the contract construed, if possible, so as to make it lawful, reasonable, and operative."). Janet Bowser and Roshong were not driving such a vehicle when their accidents occurred. We therefore conclude that the district court erred in granting summary judgment in favor of Richard Bowser and Roshong.

## III. CONCLUSION

For the above reasons, we **REVERSE** the judgment of the district court and **REMAND** with instructions to grant Nationwide's motion for summary judgment and to dismiss the counterclaims filed by Richard Bowser and Roshong.

MERRITT, Circuit Judge, dissenting.

I respectfully dissent from the Court's opinion. In diversity cases a federal court must apply the law of the highest court of the state in which it sits. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 517 (6th Cir.2001). Where the state's highest court has not decided the issue at hand, as here, the federal court may "not disregard a decision of the state appellate court on

point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* (quoting *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir.1989)).

The Court seems determined to decide this case for the insurance company no matter what the Ohio courts have said to the contrary. In an earlier draft of its opinion, the Court mistakenly said the Ohio courts are "hopelessly split." Once I advised the Court that this statement was simply wrong and that the Ohio judges are uniform in their view, it simply revised the opinion to say all of the Ohio judges who have reached a contrary result are themselves just wrong. The Ohio state courts of appeal are unanimous in their holding that a school district is not prohibited by Ohio law from purchasing uninsured and underinsured motor vehicle coverage. *Allen v. Johnson*, C.A. Nos. 01CA0046, 01CA0047, 2002 WL 1065872 (Ohio Ct.App. May 22, 2002) (portions of appeal dismissed because parts of order not final, but reversing trial court's holding that school district was not statutorily authorized to purchase uninsured and underinsured motor vehicle coverage because the issue irrelevant to the construction of the insurance contract); *Mizen v. Utica Nat'l Ins. Group*, 147 Ohio App.3d 274, 278–80, 770 N.E.2d 97, 100–01 (2002), *appeal not allowed*, 95 Ohio St.3d 1438, 766 N.E.2d 1003 (2002). In addition, two other Ohio federal district courts have addressed this issue, as well as the court below, and they have all held that a school district is not prohibited from purchasing uninsured and underinsured motor vehicle liability insurance. *Morgenstern v. Nationwide Ins. Cos.*, No. C2–00–1284, 2001 WL 1681114 (S.D.Ohio Sept.18, 2001); *Wausau Business Ins. Co. v. Chidester*, No. C–2–00–297, 2001 WL 506520 (S.D.Ohio May 11, 2001). We should not reject the opinions of the two Ohio appellate courts and the three Ohio district judges on this issue. They are more familiar with the Ohio law than we are, and there is nothing in the statute in question that prohibits their interpretation.

The primary argument raised by the insurance company is that the school district is prohibited from purchasing uninsured and underinsured motor vehicle insurance. This argument arises only because the Ohio Supreme Court rejected earlier arguments by insurance companies trying to narrowly construe policy language concerning who was covered by these supplemental policies and under what circumstances. In *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999), and *Ezawa v. Yasuda Fire & Marine Ins. Co. of America*, 86 Ohio St.3d 557, 715 N.E.2d 1142 (1999), the Court held that policies with language similar to the one at issue here provide uninsured motorist coverage for employees driving outside the scope of their employment. Our Court now reads the broad language of the statute in question as narrowly and rigidly as possible in order to protect insurance companies from a liability that they wrote into their own policies. My heart does not bleed so much for the insurance companies that I would rewrite a statute whose plain meaning appears to allow the coverage the company here undertook.

By giving the school boards the authority to obtain more coverage, the statute protects the government's coffers. The policies have already been purchased and holding the insurance companies to the terms of the policies they wrote does not impose any additional cost on the school board. It is the insurance companies, not the school boards, that bear the cost of the more expansive readings of the statute and

the policies. *Morgenstern,* 2001 WL 1681114 at *4 (citing *Wausau,* 2001 WL 506520 at *4). This is simply a case in which the Ohio courts are holding the insurance companies to the policies *they* drafted and shifting the economic costs of liability to the insurance companies instead of on the government or the individuals involved. We should respect such a policy decision by the Ohio courts rather than go out of our way to take insurance companies off the hook for the policies they have written.

I respectfully dissent.