[Cite as *Toledo City School Dist. Bd. of Edn. v. Toledo Fedn. of Teachers, AFT Local 250*, 2016-Ohio-7807.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Board of Education of Toledo
City School District

Court of Appeals No. L-15-1285

Trial Court No. CI0201501869

Appellee

v.

Toledo Federation of Teachers,
AFT Local 250

**DECISION AND JUDGMENT**

Appellant

Decided: November 18, 2016

* * * * *

Margaret J. Lockhart and Amy M. Natyshak, for appellee.

John M. Roca, for appellant.

* * * *

**SINGER, J.**

**{¶ 1}** Appellant, the Toledo Federation of Teachers (hereinafter the "Union"), appeals from the October 1, 2015 judgment of the Lucas County Court of Common Pleas denying the motion of the Union for summary judgment and granting the motion for

summary judgment filed by the Board of Education of Toledo City School District (hereinafter the "Board").  For the reasons which follow, we affirm.

{¶ 2}  On appeal, the Union asserts the following assignments of error:

1.  THE COURT OF COMMON PLEAS ERRONEOUSLY SUBSTITUTED ITS JUDGMENT FOR THAT OF THE ARBITRATOR.

2.  THE COURT OF COMMON PLEAS ERRONEOUSLY DETERMINED THAT THE BOARD HAD NOT WAIVED ITS CHALLENGE TO THE AWARD.

3.  THE COURT OF COMMON PLEAS ERRONEOUSLY DETERMINED THAT THE AWARD WAS CONTRARY TO LAW.

{¶ 3} The Board and Union are parties to a collective bargaining agreement effective from July 1, 2013 through June 30, 2016.  The parties participated in collective bargaining negotiations for this agreement in March 2013.  Each party had lead negotiators, but they delegated some issues to subcommittees for recommendations.  These subcommittees had no authority to impose financial obligations on the school district.  Any recommendations by the subcommittees had to be returned to the main negotiation table for approval.

{¶ 4} At issue in this case are the negotiation issues related to special education teachers.  The Union president testified that, similar to prior negotiations in 2011, these issues were not part of the general subcommittee process.  Because the parties knew the issues would end up in fact-finding, which could potentially interfere with the delivery of

2.

special education services at the start of the new school year, these issues were negotiated separately from the main table. He further testified that the Union appointed Beth Harrison to negotiate on behalf of the Union and the only limitation placed on her authority to negotiate was that she could not negotiate salary schedules. The Board appointed Karla Spangler, who was not a member of the Board's lead negotiating team. James Gault, Chief Academic Officer and a main table negotiator, testified that Spangler did not have authority to sign off on any contract language and that any recommendations brought to the main table had to be cost neutral in order for the Board to have sufficient funds available for salary increases.

{¶ 5} The Union president further testified that he discussed with Superintendent Pecko that any agreement reached by the two appointed negotiators would not have to return to the main table for approval so that the special education staffing could be in place at the start of the school year. Pecko did not testify at the arbitration hearing.

{¶ 6} Harrison testified that she understood she had full authority to negotiate the special education issues, except for salaries, on behalf of the union and that she was never told that Spangler did not have the same authority on behalf of the Board. Spangler testified that she knew that she did not have any authority to sign off on contract language on behalf of the Board and did not believe Harrison had such authority either.

{¶ 7} Harrison and Spangler met on June 24, 2013, to discuss the special education issues. The language of the collective bargaining agreement effective at that time provided for one hour per pupil of release time for elementary teachers and thirty

3.

minutes for secondary teachers preparing Individualized Education Plans ("IEPs"). The two negotiators agreed to increase the time to two hours for both elementary and secondary teachers. The negotiators also agree that special education teachers should be paid $100 for preparing initial IEPS. They jointly recommended an increase in compensation and release time for special education teachers preparing IEPs. Some of the other proposals reflected practices that had changed under the prior agreement because of the changes in special education law.

{¶ 8} Gault testified the recommendations of the special education subcommittee were never presented at the main table or approved by the lead negotiators and the Board. He further testified the recommendations regarding the compensation and release time for IEP preparation would have resulted in an additional $190,000 cost to the Board for each year of the three-year collective bargaining agreement. These issues were also never submitted to the fact-finder.

{¶ 9} A Union special education negotiator from the 2011 negotiations confirmed that that the special education issues were negotiated separately that year, and that she had full authority to bind the Union. She and the Board negotiator reached an agreement which was never presented to the main negotiation table and was subsequently implemented by the Board. In 2008, the same negotiator testified she was advised that any money issues had to be approved at the main table. The Board argued the 2010 subcommittee on special education did not make any proposals that would cost the district money and the subcommittee reviewed its proposals at the main table.

4.

{¶ 10} Following the fact-finder's report in September 2013, the Board prepared a summary of the tentative agreements reached by the parties and forwarded a copy of the approved proposals to the Union president. The Union never questioned the summary, which did not include the recommended IEP provisions. The Union president testified he did not question the exclusion of the special education agreements because he assumed that they had already been implemented at the beginning of the school year as had other special education issues. The Board approved the proposals approved by the lead negotiators and the fact-finder. The Union also prepared a summary of the tentative agreements, which included the special education agreements reached by Harrison and Spangler, and its proposals and the fact-finder's report were approved by the Union's membership.

{¶ 11} After ratification of the collective bargaining agreement, some special education teachers requested payment for preparing IEPs. The school board treasurer denied payment. The Union learned the Toledo Public Schools was implementing only parts of the special education agreements and not the IEP proposals agreed to by the special education negotiators. The assistant superintendent at that time first learned of the IEP proposals when special education teachers began to submit their forms for additional pay.

{¶ 12} The Union filed two grievances alleging the special education teachers were being denied payment for initial IEPs as well as two hours per pupil of release time to prepare IEPs in violation of the collective bargaining agreement (Art. XLVIII, Sec. F-4

5.

and F-7). At the Level II grievance procedure, the hearing officer denied the grievances on the ground the IEP proposals were not part of the Collective Bargaining Agreement ratified by the Board in September 2013. The matter was submitted to arbitration. An evidentiary hearing was held on August 13 and September 20, 2014.

{¶ 13} The arbitrator issued his opinion and award on February 2, 2015. He determined that the first question in this case was whether the Board was bound by the agreements reached by the two negotiators in the special education subcommittee. The arbitrator found that even though Spangler was not a member of the Board's lead negotiating team, the lead negotiators never saw or agreed to the IEP proposal, and the Board never considered or approved the IEP proposal, the proposals nevertheless became part of the collective bargaining agreement because Spangler had "ostensible or apparent" authority to bind the Board through the actions of Superintendent Pecko. The arbitrator found significant the facts that Pecko agreed to Spangler's authority, Spangler never informed Harrison that Spangler lacked final authority over the special education issues, Spangler never presented the committee agreement to the main table, and the school district implemented every change except the IEP proposal. Second, the arbitrator found that the Board was not complying with the amended IEP provisions of the collective bargaining agreement. The arbitrator determined the appropriate remedy would be to impose the IEP requirements beginning in January 2015.

{¶ 14} The Board filed a complaint in the Lucas County Court of Common Pleas on March 17, 2015, pursuant to R.C. 2711.10, seeking to have the arbitrator's award

vacated. Therefore, the Board argued the arbitrator exceeded his authority by adding to or modifying the terms of the collective bargaining agreement. The Union asserted affirmative defenses of lack of jurisdiction, statute of limitations, and waiver. The Union also filed a counterclaim against the Board alleging a breach of the collective bargaining agreement and seeking to have the court confirm the arbitrator's award and issue a preliminary and permanent injunction to compel the Board to comply with the award. Both parties moved for summary judgment.

{¶ 15} On October 1, 2015, the trial court granted the Board's motion for summary judgment and denied the Union's motion for summary judgment. The court found the arbitrator exceeded his authority under the collective bargaining agreement by modifying the terms of the agreement to include the IEP proposals. The arbitrator acknowledged the Board never saw nor approved the IEPs proposal. Therefore, the court found that the arbitrator did more than determine if the Board was violating the collective bargaining agreement by determining whether the IEP proposal was included in the collective bargaining agreement. The trial court found the arbitrator's action was contrary to statute (R.C. 3313.33; R.C. 121.22; and R.C. 4117.10(C)) and violated public policy. The union appealed.

{¶ 16} In a judgment entry dated December 11, 2015, we remanded this case to the Lucas County Court of Common Pleas so the trial court could enter a final judgment. We held the judgment appealed was not a final order and noted two deficiencies in the trial court's purported final judgment of October 1, 2015. On remand, the trial court, in a

7.

judgment dated December 23, 2015, granted summary judgment to the Toledo Board of Education of Toledo School District and vacated the February 2, 2015 arbitration award issued by arbitrator. The trial court also found that the counterclaims of the Union were foreclosed by the granting of summary judgment, there were no remaining claims at issue in this case, and denied the Union's motion for summary judgment. The appeal was then reinstated.

### Appellant's First Assignment of Error

{¶ 17} On appeal, the Union argues in its first assignment of error the trial court erred when it granted summary judgment to the Board and denied summary judgment to the Union. The Union argues that the trial court exceed its authority by vacating the arbitrator's award because the arbitrator only construed the agreement of the subcommittee approved by Spangler, who had authority to bind the Board. Furthermore, the Union argues the trial court did not have authority under R.C. 2711.10 to determine what provisions were included in the collective bargaining agreement, which had not been reduced to writing at the time of the arbitration hearing.

{¶ 18} The parties in this case agreed in the collective bargaining agreement to arbitrate grievance disputes. The arbitrator was appointed pursuant to Article XLVIII(F)(4) and (7) of the collective bargaining agreement to resolve the grievance of whether the special education teachers were entitled to an increase in pay or release time for the time needed to prepare IEPs. The grievance procedure set forth in Article II(C)(4) provides:

8.

The arbitrator shall hear only one grievance in each case provided however that all concerns arising from or out of a single occurrence or series of related occurrences shall be consolidated as a single grievance. He shall be found by, and must comply with, all the terms of these policies, unless the same is in direct conflict with an existing statute. He shall have no power to add to, delete from, or modify in any way any of the provisions of these policies.

{¶ 19} Generally, an arbitration award is deemed final because the purpose of arbitration is to end the controversy and avoid future litigation. *Youghiogheny & Ohio Coal Co. v. Oszust*, 23 Ohio St.3d 39, 41, 491 N.E.2d 298 (1986). The parties agree to accept the results of arbitration "regardless of its legal or factual accuracy." *Cleveland v. Fraternal Order of Police, Lodge No. 8*, 76 Ohio App.3d 755, 758, 603 N.E.2d 351 (8th Dist.1991).

{¶ 20} However, the trial court may vacate award for corruption, fraud, undue means, evident partiality, misconduct, an imperfect award, or where the arbitrator exceeded his authority granted by the arbitration agreement. R.C. 2711.10; *Goodyear Tire & Rubber Co. v. Local Union No. 220, United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 42 Ohio St.2d 516, 522, 330 N.E.2d 703 (1975).

{¶ 21} An arbitrator's award will not be vacated on the ground that the arbitrator exceeded his authority if the award "draws its essence from the collective bargaining agreement and is not unlawful, arbitrary or capricious." *Bd. of Edn. of Findlay City*

9.

*School Dist. v. Findlay Edn. Assn.,* 49 Ohio St.3d 129, 132-133, 551 N.E.2d 186 (1990), *superseded on other grounds by* R.C. 4117.10(A), which defines specific laws which prevail over a collective bargaining agreement, as stated in *Cincinnati v. Ohio Council 8, AFSCME*, 61 Ohio St.3d 658, 662, 576 N.E.2d 745 (1991). In ruling on the motion for summary judgment, the trial court determined the factual issues were undisputed and that the arbitrator exceeded his authority as a matter of law. Therefore, we apply a de novo standard of review. *Findlay Edn. Assn.*; *Doe v. Shaffer*, 90 Ohio St.3d 388, 390, 738 N.E.2d 1243 (2000), citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Kaminsky v. New Horizons Computer Learning Ctr. of Cleveland*, 8th Dist. Cuyahoga No. 103416, 2016-Ohio-1468, ¶ 12.

{¶ 22} On appeal, the Union argues that the arbitrator had authority to determine whether the Board was bound by the Harrison/Spangler negotiations. We disagree. The arbitrator is limited to interpreting and applying the collective bargaining agreement. *Cedar Fair, L.P. v. Falfas*, 140 Ohio St.3d 447, 2014-Ohio-3943, 19 N.E.3d 893, ¶ 7. The arbitrator cannot add to the collective bargaining agreement. *Martins Ferry City Sch. Dist. Bd. of Edn. v. Ohio Assn. of Pub. School Emps.*, 7th Dist. Belmont No. 12 BE 15, 2013-Ohio-2954, ¶ 38; *Kelly v. FOP Ohio Labor Counsel*, 2d Dist. Clark No. 94-CA-53, 1995 Ohio App. LEXIS 558, *21 (Jan. 17, 1995).

{¶ 23} In the case before us, the central issue was not whether the provisions of the contract supported the grievance, but whether a provision of the collective bargaining agreement had been modified by the parties. Under the 2013-2016 collective bargaining

10.

agreement approved by the Board, the grievance fails. It is only under the allegedly "modified" agreement that the grievance is supported.

{¶ 24} We agree with the trial court that while R.C. Chapter 4117 governs the collective bargaining agreement process, it does not usurp the statutory limitations placed upon boards of education regarding their contractual authority. No contract is binding upon a board of education unless it acts as a body to make or authorize a contract at a regular or special meeting. R.C. 3313.33 and 121.22(H); *Wolf v. Cuyahoga Falls City Sch. Dist. Bd. of Educ.*, 52 Ohio St.3d 222, 224, 556 N.E.2d 511 (1990) (school boards, as creations of statute, only have the authority granted by statute). *Compare Allen Cty. Sheriff v. FOP, Ohio Labor Council, Inc.*, 3d Dist. Allen No. 1-11-55, 2012-Ohio-3122, ¶ 14 (sheriff and union could not agree to provide for an optional health insurance carrier because that agreement would supersede the duty of the board of county commissioners to negotiate and enter into all health insurance contracts for all county employees).

{¶ 25} In this case, the board of education alone has the authority to bind the board to a collective bargaining agreement. R.C. 3313.33(B). No other school employee can bind the board to a contract. *Wolf; Walker v. Lockland City School Dist. Bd. of Edn.*, 69 Ohio App.2d 27, 29, 429 N.E.2d 1179 (5th Dist.1980). Since the Board never considered nor approved the recommendations of the special education committee regarding the IEP compensation or release time, those recommendations did not become part of the collective bargaining agreement. We find appellant's first assignment of error not well-taken.

11.

## Second Assignment of Error

{¶ 26} In its second assignment of error, the Union argues that the trial court erred by not finding that the Board waived its right to challenge the arbitrator's award when it submitted the grievances to the arbitrator. The Union argues the Board should have objected to the scope of the issues or sought an injunction prior to arbitration to prevent the arbitrator from determining whether they had agreed to the IEPs proposal.

{¶ 27} Generally, if a party has agreed to arbitrate a grievance but failed to object to the scope of the arbitration, that party waives the right to contest the scope of the arbitration on appeal. *City of Fostoria v. Ohio Patrolmen's Benevolent Assn.*, 106 Ohio St.3d 194, 2005-Ohio-4558, 833 N.E.2d 720, ¶ 28. However, we disagree with the Union that the Board agreed to arbitrate the issue of whether a contract issue was agreed upon by the parties. The Board properly submitted the grievances to arbitration. Had the arbitrator determined the grievances based on the language of the collective bargaining agreement approved by the Board, there would have been no error. The problem in this case is that the arbitrator exceeded his authority and determined that the special education negotiations led to binding contractual provisions. Appellant's second assignment of error is not well-taken.

## Third Assignment of Error

{¶ 28} In its third assignment of error, the Union argues that the trial court erred in determining that the award was made contrary to law (R.C. 3313.33) because R.C.

4117.10(A) controls and the "contrary to law" basis for vacating the arbitration award has been eliminated.

{¶ 29} R.C. 4117.10(A) provides that collective bargaining agreements preempt state or local laws regarding employment issues, except for the laws specifically exempted by the statute. In the case before us, however, the issue is not a matter of preemption. The issue here is the legal authority of a board of education and other school officials to enter into a collective bargaining agreement. Therefore, we find the trial court had jurisdiction to determine whether the IEP provisions were properly authorized by the Board and became a part of the collective bargaining agreement. Appellant's third assignment of error is not well-taken.

{¶ 30} Having found the trial court did not commit error prejudicial to appellant and that substantial justice has been done, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

Bd. of Edn. of Toledo City School
Dist. v. Toledo Fedn. of Teachers,
AFT Local 250
C.A. No. L-15-1285

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.         

_____
JUDGE

Arlene Singer, J.           

_____
JUDGE

Thomas J. Osowik, J.       
CONCUR.

_____
JUDGE