**MIZEN et al., Appellants,**

v.

**UTICA NATIONAL INSURANCE GROUP et al., Appellees.\***

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 79554.

Decided Feb. 4, 2002.

---

\* Reporter's Note: An appeal to the Supreme Court of Ohio was not allowed in 95 Ohio St.3d 1438, 2002-Ohio-2084, 766 N.E.2d 1003.

Friedman, Domiano & Smith, Jeffrey H. Friedman and Stephen S. Vanek, for appellants, Diane Mizen et al.

Gallagher, Sharp, Fulton & Norman and Mark A. Greer; Williams, Sennett & Scully Co., L.P.A., and Kelly N. Grigsby, for appellee Utica National Insurance Group.

Williams, Sennett & Scully Co., L.P.A., Michele L. Jakubs and James A. Sennett, for appellee Nationwide Agribusiness Insurance Company.

FRANK D. CELEBREZZE, JR., Judge.

{¶ 1} Appellants, Diana and Robert Mizen, appeal from the judgment of the Cuyahoga County Court of Common Pleas, which granted summary judgment in favor of appellees, Republic–Franklin Insurance Company ("Republic–Franklin") and Nationwide Agribusiness Insurance Company ("Nationwide").

{¶ 2} On December 24, 1999, Jeremy Mizen, the six-year-old son of Diana and Robert Mizen, was a passenger in a vehicle operated by his grandmother, Nancy Mizen. While traveling west on Route 2 in Eastlake, Ohio, Nancy Mizen lost control of her vehicle and struck the concrete center wall. As a result of the collision, Jeremy sustained severe head injuries and died on December 27, 1999. Nancy Mizen was insured under a policy of automobile liability insurance issued by State Farm Insurance Company with limits of $100,000 per person and $300,000 per accident. State Farm has paid its liability limit of $100,000.

{¶ 3} On the date of the accident, Diana Mizen was employed by the Willoughby–Eastlake City Schools as a teacher, and Robert Mizen was employed by the Chardon City Schools as a teacher. Nationwide insures the Willoughby–Eastlake Schools, and Republic–Franklin insures the Chardon Schools. On May 17, 2000, Robert Mizen, individually and as administrator of the estate of Jeremy Mizen, filed a complaint for declaratory judgment against Nationwide. The same day, Robert Mizen, individually and as administrator, and Diana Mizen filed a complaint for declaratory judgment against Utica National Insurance Group. The declaratory judgment actions seeking benefits were premised on the holdings of the Supreme Court of Ohio in *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116, and *Ezawa v. Yasuda Fire & Marine Ins. Co.* (1999), 86 Ohio St.3d 557, 715 N.E.2d 1142. On September 18, 2000, the trial court granted the Mizens' motion to amend their complaint to correctly name Republic–Franklin as a defendant. The actions filed against Nationwide and Republic–Franklin were consolidated in the trial court.

{¶ 4} On October 5, 2000, Robert Mizen filed a motion for summary judgment against Nationwide, and on January 29, 2001, Diana and Robert Mizen filed a motion for summary judgment against Republic–Franklin. On February 16, 2001, Nationwide filed a brief in opposition to Robert Mizen's motion for summary judgment and filed its own motion for summary judgment. On March 5, 2001, Republic–Franklin filed a brief in opposition to Diana and Robert Mizen's motion for summary judgment and filed its own motion for summary judgment.

{¶ 5} On April 20, 2001, the trial court denied appellants' motions for summary judgment and granted summary judgment in favor of Nationwide and Republic–Franklin. In its opinion, the trial court reasoned:

{¶ 6} "An insurer is only required to offer uninsured or underinsured motorists coverage to persons insured under the liability coverage of the policy. R.C. 3937.18(A). In contrast to a corporation, a school district is created by statute and its board or body has only those powers that are clearly and expressly granted to it by statute. *Verberg v. Cleveland City School Dist. Bd. of Edn.* (1939), 135 Ohio St. 246, 248, 14 O.O. 87, 20 N.E.2d 368. A school district is permitted to purchase liability coverage for its employees only to the extent that acts or omissions occur in their official capacity or in a motor vehicle owned by the board of education * * *.

{¶ 7}  "* * *

{¶ 8} "R.C. 3313.203 does not authorize a school district to purchase personal uninsured or underinsured motorists coverage for off-duty employees or family members of their employees. To the contrary, R.C. 3313.203 only authorizes insurance coverage for claims arising out [of] harm caused by and [sic] employ-

ee's actions or omissions while acting in the scope of his or her employment by the school board.

{¶ 9} "Moreover, an off-duty employee of a school district is not an 'employee' as defined under the Ohio Revised Code. R.C. 2744.01(B) defines an employee of a political subdivision 'as an officer, agent, employee or servant, whether or not compensated or full-time or part-time, who is authorized to act and is acting within the scope of the officer's, agent's employee's or servant's employment for a political subdivision.' R.C. 2744.01(F) defines the term 'political subdivision' as including a school district.

{¶ 10} "* * * [T]he Court finds that neither the Estate of Jeremy Mizen nor his parents, the Plaintiffs herein, who happened to be employed by the Chardon and Willoughby–Eastlake School Districts on the date of the accident are entitled to underinsured motorists coverage provided in the Nationwide and Republic–Franklin insurance policies."

{¶ 11} From this judgment, appellants assign the following error:

{¶ 12} "The trial court erred in granting summary judgment in favor of appellee Republic–Franklin and appellee Nationwide, as appellants are entitled to underinsured motorist coverage pursuant to *Scott–Pontzer* and *Ezawa*."

{¶ 13} In appellants' sole assignment of error, they contend that they are entitled to receive benefits because they are insureds under the commercial automobile policy issued by Nationwide to the Eastlake–Willoughby City Schools and the commercial automobile policy issued by Republic–Franklin to the Chardon City Schools. Appellants argue that they are insureds because the language in these policies concerning the identity of "insureds" is ambiguous. Appellants rely on *Scott–Pontzer*, 85 Ohio St.3d 660, 710 N.E.2d 1116, and *Ezawa*, 86 Ohio St.3d 557, 715 N.E.2d 1142, to support their argument.

{¶ 14} In *Scott–Pontzer*, the Supreme Court of Ohio determined that a commercial automobile policy issued to Superior Dairy, Inc. provided benefits to Kathryn Scott–Pontzer, the surviving spouse of Christopher Pontzer. Pontzer was an employee of Superior Dairy, not in the scope of his employment, when he was killed in an automobile accident caused by the negligence of another motorist. The commercial automobile policy issued to the corporation designated Superior Dairy, Inc. as the named insured, and the underinsured motorists section included the following definition of "insured":

{¶ 15} "B. Who Is An Insured

{¶ 16} "1. You.

{¶ 17} "2. If you are an individual, any family member.

{¶ 18} "3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.

{¶ 19} "4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured."

{¶ 20} The court concluded that the above definition of "insured" was ambiguous in that the term "You" could be construed to include the corporation's employees because a corporation can act only by and through real live persons. Employing the legal principle that ambiguous provisions in an insurance contract will be construed against the insurer, the court concluded that Pontzer was an insured at the time of his death under the underinsured motorists provision of the commercial automobile policy issued to Superior Dairy, Inc. In *Ezawa*, supra, the court reversed the Tenth Appellate District's judgment on the authority of *Scott–Pontzer* to extend uninsured motorists benefits to the minor son of a corporation's employee.

{¶ 21} In the instant case, Policy Number 0007387, the commercial automobile policy issued to the Eastlake–Willoughby City Schools by Nationwide, and Policy Number CPP 2150626, the commercial automobile policy issued to the Chardon City Schools by Republic–Franklin, contain definitions of "insured" identical to the definition of "insured" in the commercial automobile policy construed by the Supreme Court in *Scott–Pontzer*. If *Scott–Pontzer* applies in the instant case, appellants would be entitled to receive uninsured motorists benefits under the school districts' commercial automobile policies because Jeremy Mizen, the minor son of an employee of the Eastlake–Willoughby City Schools and a family member of an employee of the Chardon City Schools, was an insured at the time of the automobile accident on December 24, 1999.

{¶ 22} The trial court determined that the facts in *Scott–Pontzer* could be distinguished from the facts in this case because appellants seek uninsured motorists benefits under commercial automobile policies issued to school districts, not corporations. The trial court refused to apply *Scott–Pontzer* and instead concluded that Ohio statutory law does not authorize a school district to purchase personal uninsured motorists coverage for employees not in the scope of their employment or their families.

■ {¶ 23} School districts are authorized to purchase uninsured motorists coverage under R.C. 3313.201, which provides:

{¶ 24} "The board of education of each school district shall procure a policy or policies of insurance insuring officers, employees and pupils of the school district against liability on account of damage or injury to persons and property, including insurance on vehicles operated under a course in drivers education

certified by the state department of education and including liability on account of death or accident by wrongful act, occasioned by the operation of a motor vehicle, motor vehicles with auxiliary equipment, or all self-propelling equipment or trailers owned or operated by the school district. *Each board of education may supplement the policy or policies of insurance with collision, medical payments, comprehensive, and uninsured motorists insurance.* Before procuring such insurance each board of education shall adopt a resolution setting forth the amount of insurance to be purchased, the necessity of the insurance, together with a statement of its estimated premium cost. Insurance procured pursuant to this section shall be from one or more recognized insurance companies authorized to do business in this state." (Emphasis added.)

{¶ 25} In the case sub judice, the trial court determined that a school district may only obtain insurance for employees whose acts or omissions occur in their official capacities. The trial court relied on R.C. 3313.203, which provides that a board of education may "[p]urchase a policy or policies of insurance insuring the board, or members of boards of education, superintendents, principals, other administrators, teachers or any other group of employees employed by the board; school support entities; or volunteer bus rider assistants authorized by section 3327.16 of the Revised Code against liability on account of damages or injury to persons and property resulting from any act or omission of such board or entity, or such individual in his official capacity as a member or employee of the board of education or as a volunteer bus rider assistant or resulting solely out of his membership on, or employment by, or volunteer services to the board."

{¶ 26} We do not agree with the trial court that R.C. 3313.203 limits a school district's authority to purchase insurance coverage. R.C. 3313.203 merely provides that a board of education may purchase liability insurance for employees within the scope of their employment. It does not state that a board of education may not purchase insurance for reasons other than those contained in the statute.

{¶ 27} We also do not agree with the trial court's reliance on the definition of "employee" contained in R.C. 2744.01(B) to support its determination that school districts are not permitted to purchase insurance coverage for off-duty employees. The United States District Court for the Southern District of Ohio, Western Division, recently determined that the definition of "employee" contained in R.C. Chapter 2744 is not useful in determining whether school districts are prohibited from purchasing insurance for employees who are not within the scope of their employment. As the court stated in *Morgenstern v. Nationwide Ins. Cos.* (Sept. 18, 2001), S.D. Ohio No. C2–00–1284, 2001 WL 1681114:

{¶ 28} "Nationwide asserts that Ohio statutes defining an 'employee' of a political subdivision and authorizing a political subdivision to purchase insurance for employees contain scope of employment limitations. See O.R.C.

§§ 2744.01(F), 2744.01(B), 2744.08. Therefore, asserts Nationwide, even if the policy in question does not expressly limit uninsured motorists and underinsured motorists coverage to the scope of employment, such a limitation should be applied by operation of law.

{¶ 29} "Statutory definitions containing the limitations cited by Nationwide are expressly limited to the provisions of subchapter 2744 of the Ohio Revised Code in the context of tort liability against the political subdivision. See O.R.C. § 2744.01 (expressly limiting definition of 'employee' to 'as used in this chapter'). This case does not involve a tort claim against Big Walnut, and the provisions of subchapter 2744 are wholly inapplicable to this case. Instead this case involves the interpretation of a contract. Further, a person is an 'employee,' in the term's ordinary meaning, at all times during the term of employment. Nationwide's argument conflates the notion of employee with the question of whether an admitted employee is acting within the scope of employment. The latter issue is wholly unaddressed by the Policy language."

{¶ 30} Because the law in Ohio does not clearly prohibit a school district from obtaining insurance for its employees who are acting outside the scope of their employment, we cannot conclude that *Scott–Pontzer* should not be applied to this case. Therefore, as the definitions of "insured" in the commercial automobile policies issued by Nationwide and Republic–Franklin are identical to the provisions construed by the Supreme Court of Ohio in *Scott–Pontzer*, Jeremy Mizen must be considered an insured under these policies.

{¶ 31} Nationwide argues that even if Jeremy Mizen is an insured under the commercial automobile policy issued to the Eastlake–Willoughby City Schools, the following exclusions set forth in the policy apply and preclude coverage:

{¶ 32} "C. Exclusions

{¶ 33} "This insurance does not apply to:

{¶ 34} "* * *

{¶ 35} "5. Bodily Injury sustained by:

{¶ 36} "a. You while 'occupying' or when struck by any vehicle owned by you that is not a covered 'auto' for Uninsured Motorists Coverage under this Coverage Form;

{¶ 37} "b. Any 'family member' while 'occupying' or when struck by any vehicle owned by that 'family member' that is not a covered 'auto' for Uninsured Motorists Coverage under this Coverage Form; or

{¶ 38} "c. Any 'family member' while 'occupying' or when struck by any vehicle owned by you that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy."

{¶ 39} Nationwide maintains that the above exclusions are enforceable under the amended version of R.C. 3937.18(J) that allows exclusions in the following situation:

{¶ 40} "(1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the uninsured and underinsured motorist coverages are provided[.]" 147 Ohio Laws, Part II, 2376.

{¶ 41} The above exclusion in the uninsured motorists section of Nationwide's policy does not apply to the facts in this case. The policy defines "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child." Jeremy Mizen sustained bodily injury while occupying his grandmother's vehicle. Because Nationwide has offered no evidence to demonstrate that Nancy Mizen resided with Diana Mizen, Nancy Mizen is not a "family member" as that term is defined by the policy. As Jeremy Mizen was not occupying a vehicle owned by either an employee of the Eastlake–Willoughby City Schools or any family member of an employee of the Eastlake–Willoughby City Schools, the insurance under the uninsured motorists section in Nationwide's policy applies to cover the bodily injuries sustained by Jeremy Mizen.

{¶ 42} We do not agree with the trial court's determination that appellants are prohibited from receiving uninsured motorist benefits under the commercial automobile policies issued to the Eastlake–Willoughby City Schools or the Chardon City Schools. The trial court erred by granting summary judgment in favor of Nationwide and Republic–Franklin. Appellants' sole assignment of error has merit.

Judgment reversed
and cause remanded.

JAMES D. SWEENEY, P.J., concurs.

COLLEEN CONWAY COONEY, J., dissents.

COLLEEN CONWAY COONEY, Judge, dissenting.

{¶ 43} I respectfully dissent from the majority's decision because I believe that the trial court was correct in determining that appellants were not entitled to UM/UIM coverage under either of the insurance policies purchased by their respective employers.

{¶ 44} The trial court correctly distinguished the instant case from *Scott–Pontzer* and *Ezawa*. The case at hand is different because the entities that purchased the insurance policies in *Scott–Pontzer* and *Ezawa* were private corporations, and the purchasing entities here are school districts. Further, school districts are not authorized to purchase personal UM/UIM coverage for off-duty employees or their family members.

{¶ 45} I disagree with the majority that the use of the term "may" in R.C. 3313.201 and 3313.203 gives the board of education discretion to purchase greater insurance coverage than is specifically listed in those statutes.

{¶ 46} Boards of education are heavily regulated by the Revised Code. See R.C. Chapter 3313. *Day v. Middletown–Monroe City School Dist.* (July 17, 2000), Butler App. No. CA99–11–186, 2000 WL 979141. And although school boards manage and control the public schools, their powers are limited to the extent that those powers are clearly and distinctly granted. See *Day*, supra, citing *State ex rel. Clarke v. Cook* (1921), 103 Ohio St. 465, 134 N.E. 655, paragraph two of the syllabus.

{¶ 47} Further, as the Ohio Supreme Court stated in *Verberg v. Cleveland School Dist. Bd. of Edn.* (1939), 135 Ohio St. 246, 14 O.O. 87, 20 N.E.2d 368, at syllabus:

{¶ 48} "Boards of education are creatures of statute and have only such jurisdiction as thus conferred. They may not under their rule-making power granted by statute, confer upon themselves further jurisdiction or authority."

{¶ 49} Thus, because a school board's authority is limited to what is expressly granted by statute, it has discretionary authority only to the extent that the discretion is granted by statute. Therefore, although R.C. 3313.201 and 3313.203 grant discretion to the school board, these statutes also set forth express limits to that discretion.

{¶ 50} In the instant case, appellants argue that the school boards contracted with appellees to purchase personal UM/UIM coverage for off-duty employees and their family members.

{¶ 51} However, a school board may not enter into a contract when it does not have a statutory right to do so. See *Hess v. James A. Garfield Local School Dist. Bd. of Edn.* (Dec. 5, 1986), Portage App. No. 1651, 1986 WL 14320 (where

court invalidated a contract entered into by the board of education when it failed to comply with statutory requirements). And "where acts of a board contravene the power expressly granted by statute, such acts may be invalidated by the courts." *Hoeflinger v. W. Clermont Local Bd. of Edn.* (1984), 17 Ohio App.3d 145, 17 OBR 245, 478 N.E.2d 251; *Hess,* supra; see also, *Verberg,* supra; *Perkins v. Bright* (1923), 109 Ohio St. 14, 141 N.E. 689; *State ex rel. Clarke v. Cook* (1921), 103 Ohio St. 465, 134 N.E. 655.

{¶ 52}   As noted above, the statutes at issue are R.C. 3313.201 and 3313.203, which set forth a school board's authority in purchasing liability insurance.

{¶ 53}   R.C. 3313.201 provides:

{¶ 54}   "(A) The board of education of each school district shall procure a policy or policies of insurance insuring officers, employees, and pupils of the school district against liability on account of damage or injury to persons and property, including * * * liability on account of death or accident by wrongful act, *occasioned by the operation of a motor vehicle, * * * owned or operated by the school district.* Each board of education may supplement the policy or policies of insurance with collision, medical payments, comprehensive, *and uninsured motorists insurance.*" (Emphasis added.)

{¶ 55}   R.C. 3313.203 provides that the board of education of any school district may:

{¶ 56}   "(A) Purchase a policy or policies of insurance insuring the board, or members of boards of education, superintendents, principals, other administrators, teachers or any other group of employees employed by the board; * * * against liability on account of damages or injury to persons and property resulting from any act or omission of such board or entity, *or such individual in his official capacity as a member or employee of the board* of education or as a volunteer bus rider assistant *or resulting solely out of his * * * employment by * * * the board.*" (Emphasis added.)

{¶ 57}   R.C. 3313.201 and 3313.203 must be read in conjunction. R.C. 3313.201 states that it is mandatory for the school board to purchase automobile insurance for all vehicles owned or operated by the school district. Thus, the word "shall" is used. Pursuant to R.C. 3313.201, UM/UIM coverage is an optional supplement to the required insurance. Thus, the word "may" is used. Further, R.C. 3313.203 gives the school board the option to purchase additional insurance, but does not require the board to do so. Therefore, R.C. 3313.203 uses the word "may." Finally, *any* insurance policy that the board purchases that insures employees of the board, whether that policy is mandatory or discretionary, must only cover liability "resulting solely out of his * * * employment by * * * the board." R.C. 3313.203.

{¶ 58} Thus, a board of education has the option to purchase supplemental insurance. However, if it chooses to purchase the additional insurance, it is limited to purchasing coverage for employees acting within the scope of their employment.

{¶ 59} The discretion given to boards of education is expressly limited by R.C. 3313.201 and 3313.203. To interpret these two provisions as permitting school boards unbridled discretion in purchasing liability insurance flies in the face of the long-standing rule that a school board only has authority to the extent it is expressly granted by statute. *Verberg; Clark.*

{¶ 60} In the instant case, the Chardon and Willoughby–Eastlake school boards were limited to purchasing UM/UIM coverage for on-duty employees only. R.C. 3313.201 and 3313.203. Further, such UM/UIM insurance could only cover damages or injuries arising solely out of the employee's employment by the board. R.C. 3313.203.

{¶ 61} Thus, even if the policies in question are construed as providing further coverage, the acts of the school boards in purchasing policies which expand UM/UIM coverage to nonemployee family members are void. *Hoeflinger* and *Verberg,* supra.

{¶ 62} This a result comports with *Scott–Pontzer,* which states:

{¶ 63} "[I]n drafting contracts of insurance, insurers must do so with language that is clear and unambiguous *and that comports with the requirements of law.* See, also, *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380; *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 639 N.E.2d 438." (Emphasis added.)

{¶ 64} Should the policy language be construed, as the majority suggests, as providing UM/UIM coverage for off-duty employees and their family members, then the policy would not comport with the law as set forth in R.C. 313.201 and 3313.203.

{¶ 65} Thus, I agree with the trial court and would find that the school boards did not have authority to contract for UM/UIM coverage for off-duty employees and their families. Accordingly, I would find that the policies are limited to the type of coverage set forth in R.C. 3313.201 and 3313.203, and I would affirm the trial court's granting of summary judgment for appellees.