DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-Appellant Wausau Business Insurance Company appeals the judgment of the Pickaway County Court of Common Pleas, which denied the motion for summary judgment of appellant and granted the motion for summary judgment of Plaintiffs-Appellees Vera Carle, as Administrator of the Estate of Janet M. Bayne, and Wendy Gamelli. Appellant asserts that the trial court erred in determining that appellees were an insured under a insurance policy issued by appellant to the Westfall Local School District pursuant to the Supreme Court of Ohio's decision in Scott-Pontzer v. Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292, 710 N.E.2d 1116.
 {¶ 2} For the reasons that follow, we disagree with appellant and affirm the well-reasoned judgment of the trial court.
 The Trial Court Proceedings {¶ 3} On January 7, 1999, Janet M. Bayne was operating a motor vehicle owned by her mother, Vera Carle, when it was struck by another vehicle owned by Defendant Doug Betts and driven by Defendant Jason Stumbo. Riding as a passenger in Carle's vehicle was her other daughter, Plaintiff-Appellee Wendy Gamelli.
 {¶ 4} Bayne died from injuries sustained in the collision, while her sister, Gamelli, also suffered injuries.
 {¶ 5} At the time of the accident, Carle was an employee of the Westfall Local School District.
 {¶ 6} In June 1999, Appellees Carle and Gamelli filed a complaint against Stumbo and Betts, asserting claims of negligence, negligent entrustment, and wrongful death. Stumbo and Betts filed their answers to the complaint.
 {¶ 7} Subsequently, appellees amended their complaint to include as defendants, potential carriers of uninsured and underinsured motorists (UM/UIM) coverage that might cover their potential losses. The defendants added to the action were Defendant-Appellant Wausau Business Insurance Company (Wausau), Wayne Mutual Insurance Company (Wayne), and Grange Mutual Casualty Company (Grange).
 {¶ 8} Appellees asserted that they were entitled to UM/UIM coverage under separate policies issued by each of the added defendants. Appellees claimed UM/UIM coverage under a homeowner's insurance policy issued to Carle's former husband by Wayne. Similar claims were made under a policy issued by Grange.
 {¶ 9} Additionally, appellees asserted that pursuant to the Supreme Court of Ohio's holding in Scott-Pontzer, they were entitled to coverage under the UM/UIM provisions of an insurance policy issued by Wausau to the Westfall Local School District.
 {¶ 10} The defendants timely filed their answers, but Wausau also filed a counterclaim for declaratory judgment. Wausau asserted that appellees were not entitled to coverage under the UM/UIM provisions of the Westfall Local School District's policy and sought declaratory relief to that end.
 {¶ 11} On September 25, 2000, appellees dismissed Grange from the action without prejudice.
 {¶ 12} Subsequently, Wausau and Wayne filed motions for summary judgment as to the issue of insurance coverage under their respective policies. Appellees responded with memoranda in opposition to these motions. Appellees also filed motions for summary judgment pertaining to the coverage issues.
 {¶ 13} The trial court granted Wayne's motion for summary judgment, finding that appellees were not entitled to UM/UIM coverage under Carle's former husband's homeowner's policy. However, the trial court found that, pursuant to Scott-Pontzer and other authorities, appellees were entitled to UM/UIM coverage under the insurance policy Wausau issued to the Westfall Local School District.
 {¶ 14} Defendants Stumbo and Betts settled with appellees and were dismissed from the action with prejudice.
 {¶ 15} Ultimately, the parties filed an agreed entry resolving all outstanding claims against all remaining defendants, including appellees' damages payable by Wausau.
 The Appeal {¶ 16} Appellant timely filed a notice of appeal and presents the following assignment of error for our review: "The trial court erred to the prejudice of Defendant-Appellant Wausau Business Insurance Company in denying its motion for summary judgment and in granting [Plaintiffs-Appellees'] motion for summary judgment."
 I. Summary Judgment {¶ 17} We conduct a de novo review of a trial court's decision to grant summary judgment pursuant to Civ.R. 56. Renner v. Derin AcquisitionCorp. (1996), 111 Ohio App.3d 326, 676 N.E.2d 151. The Supreme Court of Ohio has established the test to be employed when making a determination regarding a motion for summary judgment.
 {¶ 18} "Under Civ.R. 56, summary judgment is proper when `(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.'" Welco Industries, Inc. v. Applied Cos.,67 Ohio St.3d 344, 346, 1993-Ohio-191, 617 N.E.2d 1129 (citations omitted).
 {¶ 19} Therefore, upon review, we give no deference to the judgment of the trial court. See Renner, supra.
 II. Scott-Pontzer and its Progeny {¶ 20} Our analysis begins with a discussion of the Supreme Court of Ohio's decision in Scott-Pontzer.
 {¶ 21} In Scott-Pontzer, the plaintiff sued the insurance provider of her deceased husband's employer seeking UM/UIM coverage for damages arising from his wrongful death, which had occurred while the decedent was acting outside the scope of his employment and operating a motor vehicle owned by his wife. See Scott-Pontzer, 85 Ohio St.3d 660,1999-Ohio-292, 710 N.E.2d 1116. The decedent's employer, to whom the policies in controversy were issued, was a private corporation, which the court determined could not, by itself, operate a motor vehicle or suffer bodily injury or death. See id. at 664.
 {¶ 22} Accordingly, when faced with the policies' definition of who was an insured under the policies, the court determined that the decedent was an insured under the UM/UIM coverage of his employer's insurance policies.[1]
 {¶ 23} In a subsequent case, Ezawa v. Yasuda Fire MarineIns. Co. of Am., 86 Ohio St.3d 557, 1999-Ohio-124, 715 N.E.2d 1142, the Supreme Court of Ohio, relying exclusively on Scott-Pontzer, extended UM/UIM coverage to family members of a corporation's employees.[2]
 III. Scott-Pontzer's Application to Policies Held by School Boards {¶ 24} In the case sub judice, Wausau's policy at issue defined "insured" using the exact language as found in the policies addressed inScott-Pontzer.
 {¶ 25} However, appellant nonetheless asserts that Scott-Pontzer
is not applicable to policies issued to boards of education. Appellant argues that school boards have limited authority to enter into contractual agreements and a school board is not authorized to purchase UM/UIM coverage to cover employees involved in activities beyond the scope of their employment. Thus, appellant concludes that the school board could not have purchased the coverage needed in order for appellees' injuries to be covered by its UM/UIM insurance.
 {¶ 26} Appellant is correct in its assertion that school boards are statutory creatures with limited authority. "School boards are creations of statute and have no more authority than what has been conferred on them by statute or what is clearly implied therefrom." Wolfv. Cuyahoga Falls City School Dist. Bd. of Edn. (1990), 52 Ohio St.3d 222,223, 556 N.E.2d 511, citing Marion Local School Dist. Bd. of Edn. v.Marion Cty. Bd. of Edn. (1958), 167 Ohio St. 543, 545, 150 N.E.2d 407;CADO Business Systems of Ohio, Inc. v. Cleveland City School Dist. Bd. ofEdn. (1983), 8 Ohio App.3d 385, 387, 457 N.E.2d 939.
 {¶ 27} Appellant relies on R.C. 9.83, 3327.09, and 3313.201 as authority for its position that Scott-Pontzer does not apply in the case sub judice.
 {¶ 28} R.C. 9.83 provides that, "any political subdivision may procure a policy or policies of insurance insuring its officers and employees against liability for injury, death, or loss to person or property that arises out of the operation of an automobile * * * by the officers or employees while engaged in the course of their employment or official responsibilities for the state or the political subdivision." (Emphasis added.) R.C. 9.83.
 {¶ 29} It is apparent from the plain meaning of R.C. 9.83 that it is not applicable in the case sub judice. R.C. 9.83 only concerns the purchase of liability insurance to protect a political subdivision's (i.e., school board's) employees from liability for injuries occurring from the operation of a vehicle during the scope of their employment. The case sub judice does not involve the purchase of liability insurance, the liability of a school board employee, nor the vicarious liability of the school board. UM/UIM coverage is distinct and separate from liability insurance.
 {¶ 30} R.C. 3327.09 provides in part that, "The board of education of each school district shall procure for the benefit of its employees who operate a school bus, motor van, or other vehicle used in the transportation of school children motor vehicle liability insurance for injuries to persons and property." (Emphasis added.) R.C. 3327.09. Appellant points out that this section does not require the purchase of UM/UIM coverage.
 {¶ 31} Nevertheless, this section also is irrelevant to our discussion. R.C. 3327.09 merely requires a school board to purchase liability insurance and does not reference UM/UIM coverage, which is presently at issue.
 {¶ 32} Like R.C. 3327.09, R.C. 3313.201 requires a school board to purchase liability insurance to cover damages and injuries caused by employees, officers, and students arising from, among other things, the operation of a motor vehicle. Further, R.C. 3313.201 provides that a board of education may supplement its insurance policy or policies with UM/UIM coverage. However, appellant asserts that even though a school board may purchase UM/UIM coverage for its employees, that coverage is limited to injuries and damages occurring during the scope of their employment.
 {¶ 33} The above statutes appear to grant school boards broad authority in the purchase of liability insurance and UM/UIM coverage.
 {¶ 34} In an opinion by the Attorney General of Ohio, cited by the parties, it was concluded that "a board of education may grant fringe benefits to its employees as part of their compensation" and that "pursuant to its power to fix compensation, a board of education may provide uninsured motorist coverage for its employees." 1982 Ohio Atty.Gen.Ops. No. 037, at 2-111.
 {¶ 35} In Wausau Business Ins. Co. v. Chidester (May 11, 2001), S.D.Ohio No. C-2-00-297, unreported, the court was faced with a factual scenario very similar to the one sub judice. In addressing the same issue presented to this Court, it reasoned as follows: "Even assuming that the [school board] lacks the statutory authority to purchase insurance coverage for accidents occurring outside the scope of employment, Wausau is nevertheless accountable for the language in the policy it drafted." Id.
 {¶ 36} The issue, as framed by the court, was not whether the school board was authorized to purchase the insurance coverage as found in the policy, but whether the insurance company was obligated "to provide coverage * * * under that policy" as purchased. See id. TheChidester Court continued on to hold that Scott-Pontzer was applicable and that the school board employee in Chidester was an insured under the policy in question. See id.
 {¶ 37} The Chidester holding has been followed in several other federal cases. See Morgenstern v. Nationwide Ins. Cos. (Sept. 18, 2001), S.D.Ohio No. C2-00-1284, unreported; Henry v. Wausau Business Ins.
(Sept. 27, 2001), S.D.Ohio No. C-1-00-642, unreported.[3]
 {¶ 38} Similarly, in Mizen v. Utica Natl. Ins. Group,147 Ohio App.3d 274, 770 N.E.2d 97, 2002-Ohio-37, the Eighth District Court of Appeals has addressed comparable arguments concerning the applicability of Scott-Pontzer under comparable facts. The Mizen Court held that, "Because the law in Ohio does not clearly prohibit a school district from obtaining insurance for its employees who are acting outside the scope of their employment, we cannot conclude thatScott-Pontzer should not be applied to this case." Id., appeal not allowed 97 Ohio St.3d 1438, 766 N.E.2d 1003, 2002-Ohio-2084.
 {¶ 39} Likewise, in Allen v. Johnson, Ninth Dist. No. 01CA0046, 01CA0047, 2002-Ohio-3404, the Ninth District Court of Appeals reached the same conclusion as found in Mizen. The Allen Court determined that, "The school district's authority to purchase particular types of insurance has no bearing on determining the scope of UM/UIM coverage under the terms of the policies." See Allen v. Johnson, supra.
 {¶ 40} The Ninth District Court of Appeals concluded that an employee and that employee's family were "insureds" under the UM/UIM coverage of a policy issued to a school board, even for injuries sustained outside of the scope of the employee's employment. See id.
 Conclusion {¶ 41} We are convinced that the holdings set forth in Mizen
and Allen are correct in their applications of Scott-Pontzer andEzawa.
 {¶ 42} Accordingly, we find that appellees qualified as insureds under the UM/UIM coverage of the policies held by the school board. Thus, we overrule appellant's sole assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
Abele, J., Concurs in Judgment and Opinion with Opinion:
 {¶ 1} As the principal opinion aptly notes, intermediate appellate courts are obligated to follow Ohio Supreme Court decisions. For this reason and this reason alone, I reluctantly agree with the principal opinion's affirmance of the trial court's judgment.
 {¶ 2} Interestingly, I note that a vast majority of the other jurisdictions that have considered the issue raised in Scott-Ponzer v.Liberty Mutual Fire Ins. Co. (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116
have apparently reached a conclusion opposite to the conclusion drawn by the Ohio Supreme Court. See Foote v. Royal Ins. Co. of America (1998),88 Haw. 122, 124-125, 962 P.2d 1004, 1006-1007 and the cases cited therein.
 {¶ 3} Moreover, as Justice Stratton states in her dissenting opinion in Scott-Ponzer, it is inherent that a commercial insurance policy, purchased by a corporation and written for a corporation (or, by extension, a board of education) applies to the corporate entity and those acting within the scope of employment for that entity. A commercial policy should not be construed to provide uninsured or underinsured motorist coverage in a situation that involves personal, non-employment related activities of an employee (or a member of the employee's family). Nevertheless, the Scott-Ponzer decision must be followed unless and until the Ohio Supreme Court decides to revisit this issue.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellees recover of appellant costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the PICKAWAY COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J.: Concurs in Judgment and Opinion with Opinion.
Harsha, J.: Concurs in Judgment Only.
[1] {¶ a} The policies at issue in Scott-Pontzer, contained the following language to define who was an insured.
{¶ b} "B. Who is an insured
{¶ c} "1. You.
{¶ d} "2. If you are an individual, any family member.
{¶ e} "3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction."
[2] As an aside, we note that the construction of the policies by the majority opinion in Scott-Pontzer and its progeny, may well strain the ordinary meaning of the policy language and thereby create coverage where the parties to the contract anticipated none. As Justice Lundberg Stratton so aptly stated in her dissent in Ezawa, "Pandora's Box continues to release its contents." See Ezawa v. Yasuda Fire MarineIns. Co. of Am., 86 Ohio St.3d 557, 559, 1999-Ohio-124, 715 N.E.2d 1142
(Lundberg Stratton, J., dissenting). We are, however, obligated to follow the controlling precedents issued by the Supreme Court of Ohio and we rule accordingly.
[3] We note that the holdings of these federal cases have been effectively overturned pursuant to Nationwide Agribusiness Ins. Co. v.Roshong (July 9, 2002), C.A.6 No. 01-4009, unreported. Nevertheless, since we are not bound by this decision of the United States Sixth Circuit Court of Appeals, we choose to follow the holdings of Mizen v.Utica Natl. Ins. Group, 147 Ohio App.3d 274, 770 N.E.2d 97,2002-Ohio-37, and Allen v. Johnson, Ninth Dist. No. 01CA0046, 01CA0047,2002-Ohio-3404, which were issued by fellow Ohio Courts of Appeals.