OPINION
{¶ 1} Plaintiff-appellant, Kim Cahal Gates, appeals from a decision of the Clermont County Court of Common Pleas rendering summary judgment against her and in favor of defendant-appellee, Wausau Business Insurance Company ("Wausau"), with respect to Gates' claim for underinsured motorist coverage.
 {¶ 2} On May 19, 1998, Gates was seriously injured in an automobile accident in Loveland, Ohio. The accident was caused by Elizabeth Clancy. Clancy was insured under an automobile liability insurance policy with USAA; the policy had liability limits of $100,000.
 {¶ 3} At the time of the accident, Gates was employed by the Loveland City School District ("LCSD"). Gates was driving her own automobile outside the scope of her employment with LCSD when Clancy collided with her. LCSD is insured under a business auto liability policy with Wausau, which provides uninsured/underinsured motorist ("UM/UIM") coverage.
 {¶ 4} In October 2001, Gates filed a complaint against Wausau, seeking UIM coverage under LCSD's policy with the insurer, pursuant toScott-Pontzer v. Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292. Gates and Wausau filed cross-motions for summary judgment on the issues of whether Gates was entitled to UIM coverage under LCSD's policy with Wausau, and if so, in what amount. Gates argued in her motion for summary judgment that she was entitled to $2 million in UM/UIM coverage, while Wausau argued that LCSD had elected to reduce the limits of its UM/UIM coverage to $500,000.
 {¶ 5} In September 2002, the trial court issued a decision granting summary judgment in favor of Wausau and against Gates. Finding it unnecessary to settle the parties' dispute over the amount of UM/UIM coverage available under the policy, the trial court held that R.C.3313.201(A) does not permit a school district to purchase UM/UIM coverage for its employees acting outside the scope of their employment. The trial court also noted that R.C. 3313.201(A) only referred to UM coverage, not UIM coverage, and concluded that it was "in no position to edit R.C. 3313.201(A) to include UIM coverage for school districts. To [hold] otherwise would be to tread upon the authority of the General Assembly to enact and effectuate the laws of the state."
 {¶ 6} Gates appeals from the trial court's decision, raising two assignments of error.
Assignment of Error No. 1
 {¶ 7} "The trial court erred by holding that the rationale contained in Scott-Pontzer v. Liberty Mutual Fire Ins. Co. does not apply to provide um/uim coverage when the insured is a board of education."
 {¶ 8} Gates argues that the trial court erred in granting summary judgment against her and in favor of Wausau upon determining that she was not entitled to UIM coverage under LCSD's policy with Wausau. Gates contends that she was an insured under the policy for purposes of UIM coverage, pursuant to the Ohio Supreme Court's decision in Scott-Pontzer, and that school districts are not prohibited from purchasing UM/UIM coverage for their employees when they are acting outside the scope of their employment. Gates further contends that, for purposes of R.C. 3313.201, UM coverage includes UIM coverage. We agree with Gates' arguments.
 {¶ 9} An appellate court engages in a de novo standard of review when considering an appeal from a decision granting summary judgment. Burgess v. Tackas (1998), 125 Ohio App.3d 294, 296. The trial court's decision granting summary judgment must be reviewed independently and without deference to the trial court's judgment. Id. In conducting its independent review, the appellate court applies the same standard as the trial court in determining a motion for summary judgment. Midwest Ford, Inc. v. C.T. Taylor Co. (1997), 118 Ohio App.3d 798, 800. Pursuant to Civ.R. 56(C), a trial court is to grant summary judgment only when (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 10} In Scott-Pontzer, the court held that a plaintiff's decedent, who had been killed in an automobile accident that was caused by an underinsured motorist, was entitled to UIM coverage under his employer's commercial automobile liability policy. Scott-Pontzer,85 Ohio St.3d at 665. The decedent's employer, a corporation, was the named insured under the policy, which defined an "insured" for purposes of UIM coverage as including, "[y]ou," and "[i]f you are an individual, any family member." Id. at 663. The court determined that the policy language concerning who was an "insured," was ambiguous, because the word "you," while referring to the corporation, also could be interpreted to include the corporation's employees, "since a corporation can act only by and through real live persons." Id. at 664. Citing the principle that ambiguous language in an insurance policy is to be construed liberally in favor of the insured and against the insurer, the court concluded that plaintiff's decedent was an insured under the policy for purposes of UIM coverage. Id. at 665. The court also concluded that plaintiff's decedent was entitled to UIM coverage even though he was not acting within the scope of his employment at the time the accident occurred, because the policy did not so limit UIM coverage. Id. at 666.
 {¶ 11} LCSD's policy with Wausau defines an insured for purposes of UIM coverage in language identical to the policy at issue in Scott-Pontzer. Because school districts, like corporations, can act only by and through real live persons, LCSD's employees are insureds under the school district's policy with Wausau.
 {¶ 12} Wausau argues, however, that school districts like LCSD are not permitted to purchase UM/UIM coverage for their employees while they are acting outside the scope of their employment. We disagree with this argument. Former R.C. 3313.201 provides in relevant part:
 {¶ 13} "The board of education of each school district shall procure a policy or policies of insurance insuring officers, employees and pupils of the school district against liability on account of damage or injury to persons and property, * * * including liability on account of death or accident by wrongful act, occasioned by the operation of a motor vehicle * * * owned or operated by the school district. Each board of education may supplement said policy or policies of insurance with collision, medical payments, comprehensive, and uninsured motorists insurance."
 {¶ 14} R.C. 3313.201 requires a school district to purchase liability insurance insuring, among others, its employees against liability arising from damage or injury to persons or property, including liability arising from death or accident by wrongful act, occasioned by the operation of a motor vehicle owned or operated by the school district. R.C. 3313.201 permits a school board to supplement this liability coverage with, among other types of insurance, UM coverage. There is no requirement in R.C. 3313.201 that a school district's employee be acting within the scope of his or her employment with the school board at the time of an accident in order for UM coverage to apply in favor of that employee.
 {¶ 15} Wausau argues that the UM insurance that a school board is permitted to purchase under R.C. 3313.201 is limited to motor vehicles "owned and operated by the school district." In support, Wausau points out that R.C. 3313.201 sets forth the liability insurance policy or policies a school board is required to purchase, and then provides that the school board "may supplement said policy or policies of insurance" with UM insurance. Wausau argues that "[t]he phrase 'said policy or policies' can only refer to the previously identified liability policy, which only covers vehicles owned or operated by a board of education. * * * Consequently, the uninsured motorist coverage only applies in the conditions applicable to the previously mentioned liability policy. Those requirements are that the policy only applies to a vehicle owned or operated by a board of education." We disagree with this argument.
 {¶ 16} Wausau's proposed interpretation of R.C. 3313.201 ignores the plain meaning of the words used in the statute. R.C. 3313.201
requires a school board to procure an insurance policy or policies insuring the school district's officers, employees and pupils against liability arising from damages or injury to persons or property. The insurance a school board is required to purchase includes insurance for liability arising from death or accident by wrongful act, occasioned by the operation of a motor vehicle owned or operated by the school district. R.C. 3313.201 permits a school board to supplement the liability insurance it is required to purchase with several additional types of insurance, including UM coverage. But R.C. 3313.201 does not impose the restriction on those additional types of insurance coverages that Wausau seeks to impose here, namely, that the coverage afforded by the additional types of insurance, including UM coverage, only applies to vehicles owned or operated by the school district. Essentially, Wausau is asking this court to read into the statute a requirement that any UM coverage purchased by a school district pursuant to R.C. 3313.201 apply only to employees acting within the scope of their employment. However, it is well-settled that a court has a duty to give effect to the words used in a statute, and to avoid deleting words used or inserting words not used; if the statute's meaning is unambiguous and definite, it must be applied as written. Bailey v. Republic Engineered Steels, Inc.,91 Ohio St.3d 38, 39-40, 2001-Ohio-236.
 {¶ 17} The Sixth Circuit Court of Appeals has held in an unreported case that Scott-Pontzer is inapplicable in cases where UIM coverage is sought under a school district's commercial automobile liability insurance policy, because a school district does not have the statutory authority to purchase UM/UIM coverage for its employees acting beyond the scope of their employment. See Nationwide Agribusiness Ins. Co. v. Roshong (C.A.6, 2002), No. 01-4009, unreported. However, all appellate courts in this state that have ruled on the issue have found otherwise. See, e.g., Mizen v. Utica Nat'l. Ins. Group,147 Ohio App.3d 274, 280, 2002-Ohio-37 (Eighth Appellate District), and Roberts v. Wausau Business Ins. Co., 149 Ohio App.3d 612, 619-620,2002-Ohio-4734 (Tenth Appellate District).
 {¶ 18} Wausau also argues that a school district lacks authority to purchase UM/UIM insurance for its employees who are acting outside the scope of their employment, because R.C. 2744.01(B) defines the word "employee" as an individual who is "acting within the scope of the * * * employee's * * * employment for a political subdivision." But the definition of "employee" found in R.C. 2744.01(B) is expressly limited to use of the term "[a]s used" in R.C. Chapter 2744. The provisions of R.C. Chapter 2744 relate to the tort liability of political subdivisions; hence, R.C. 2744.01(B)'s definition of "employee" has no application to a case involving the scope of authority of a school district's board of education under R.C. 3313.201, and the interpretation of UM/UIM provisions of a policy of commercial automobile liability insurance. See Mizen, 147 Ohio App.3d at 280.
 {¶ 19} Finally, the trial court held that LCSC lacked authority under R.C. 3313.201 to purchase UIM coverage for its employees on the alternative ground that that statute only mentions UM coverage, not UIM coverage. We disagree with this argument as well.
 {¶ 20} The policy at issue was effective from August 27, 1997 to August 27, 1998; therefore, LCSD must have contracted with Wausau to purchase the UIM policy on or before August 27, 1997. On August 27, 1997, the version of R.C. 3937.18 that was then in effect was the version that became effective on October 20, 1994. Under that version of R.C.3937.18, insurers like Wausau were required to provide both UM and UIM coverage in any automobile or motor vehicle liability insurance policy they issued. See former R.C. 3937.18(A). Former R.C. 3937.18(C) provides that "[t]he named insured may only reject or accept both coverages offered under division (A) of this section." Thus, in order to obtain UM coverage for its employees, as was expressly permitted under R.C. 3313.201, LCSD had to accept UIM coverage as well.
 {¶ 21} In light of the foregoing, we conclude that Gates was a named insured under LCSD's policy with Wausau, and was therefore entitled to UIM coverage. On remand, the trial court will address all remaining issues between the parties, including the issue of the amount of UM/UIM coverage available to Gates under LCSD's policy with Wausau.
 {¶ 22} Gates' first assignment of error is sustained.
Assignment of Error No. 2
 {¶ 23} "The trial court erred by issuing its decision on summary judgment on an issue in which neither party presented argument nor evidence."
 {¶ 24} Gates' second assignment of error is overruled on the basis that it has been rendered moot by our disposition of her first assignment of error.
 {¶ 25} The trial court's judgment is reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.
VALEN, P.J., and POWELL, J., concur.