[Cite as *Martins Ferry City School Dist. Bd. of Edn. v. Ohio Assn. of Pub. School Emps.*, 2013-Ohio-2954.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| MARTINS FERRY CITY SCHOOL DISTRICT BOARD OF EDUCATION, | ) ) | CASE NO. 12 BE 15 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| OHIO ASSOCIATION OF PUBLIC SCHOOL EMPLOYEES, et al., | ) ) | |
| | ) | |
| DEFENDANTS-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:         Civil Appeal from Common Pleas
                                  Court, Case No. 11 CV 382.

JUDGMENT:                         Reversed;
                                  Arbitrator's Award Reinstated.

APPEARANCES:
For Plaintiff-Appellee:           Attorney James Burnes
                                  Bricker & Eckler, LLP
                                  100 South Third Street
                                  Columbus, OH  43215

                                  Attorney Al Davies
                                  Fregiato, Myser, Davies & Gagin
                                  320 Howard Street
                                  Bridgeport, OH  43912

For Defendants-Appellants:        Attorney Kristen McKinley
                                  6805 Oak Creek Drive
                                  Columbus, OH  43229

JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

                                  Dated:  June 21, 2013

DeGenaro, P.J.

{¶1} Defendants-Appellants Ohio Association of Public School Employees, Local 4 AFSCME and its Local 546 appeal the decision of the Belmont County Court of Common Pleas vacating the arbitration award upon the motion of Plaintiff-Appellee Martins Ferry City School District Board of Education in their dispute regarding whether the Board may institute a 5% uniform wage reduction of the nonteaching employees' wages. OAPSE argues that civil service law applies to the bargaining unit, not statutory provisions which provide for uniform wage reduction. Further, OAPSE contends the trial court erred in vacating the arbitration award and improperly substituted its own judgment for that of the arbitrator.

{¶2} OAPSE's arguments are meritorious in part. This court will not disturb the arbitrator's decision that R.C. Chapter 124 did not apply to the employees of the school district. But because the arbitrator's award draws its essence from the collective bargaining agreement, which manifested the intent of the parties for the CBA to preempt statutory provisions relative to employee wages, the trial court erred in substituting its judgment for that of the arbitrator and vacating the arbitration award. Accordingly, the judgment of the trial court is reversed, and the arbitrator's award is reinstated.

## Facts and Procedural History

{¶3} OAPSE is the sole and exclusive bargaining agent for all nonteaching employees employed by the Martins Ferry City School District, except confidential and administrative personnel. The Board and OAPSE have been parties to a series of collective bargaining agreements. The collective bargaining agreement at issue in this case was effective from January 1, 2009 through December 31, 2011. The CBA contains an article on wages which provides for no increase in wages for the first year and then wage reopeners at the beginning of the second and third years, along with a salary schedule. Further, the CBA outlines a grievance procedure with final and binding arbitration as the final step.

{¶4} In 2009, the school district was in financial distress, and ended the 2009 fiscal year with a deficit. As a result, the school district received an audit citation, and the Performance Audit Division of the State Auditor's Office performed a financial review of

the district and presented a report to the Board. In that report, it recommended that the Board reduce the full-time teaching staff by a minimum of nine. The Board felt that the recommendations in the Performance Audit would have a negative effect on the school district's educational program.

{¶5} Due to this financial distress, the parties' contract negotiations resulted in a CBA providing for no wage increase in 2009 and wage reopener provisions for 2010 and 2011. OAPSE decided not to exercise the wage reopener option for 2010 because of the school district's financial condition, and sent a letter to the superintendent regarding its decision. Subsequently, on January 25, 2010, the Board determined that it would institute a 5% uniform salary reduction effective July 5, 2010 for a maximum of two years. This salary reduction would be for all union and non-union employees and administrators, including OAPSE. The Board further determined that the salary indexes and schedules would be frozen as of that date, January 25, 2010, for a maximum of two years. The Board presented OAPSE with a Memorandum Agreement concerning the uniform salary reduction, but OAPSE determined that it would not sign this agreement. The MFEA, the teachers' union, did sign the Memorandum Agreement.

{¶6} The wage reduction for twelve-month employees took effect on July 15, 2010 and the reduction for nine-month employees took effect on August 27, 2010. OAPSE filed two grievances for the different employee groups challenging the uniform wage reductions as a violation of the CBA. These grievances proceeded through the steps pursuant to the CBA and were denied. In denying the grievances, the Board President held that the "wage reduction was part of a uniform plan affecting all employees of our school district and governed by Ohio Revised Code 3319.082."

{¶7} OAPSE appealed the matter to arbitration and the two grievances were consolidated. The Board contested whether the arbitrator had jurisdiction to hear the matter, and the arbitrator held a preliminary hearing and determined that she had jurisdiction to hear the grievances. Then on April 26, 2011, the arbitrator held a hearing on the merits of the grievances, during which both parties presented testimony and exhibits.

{¶8} On June 29, 2011, the arbitrator issued an opinion and award sustaining the grievance and directing the Board to cease and desist from implementing the 5% wage reduction on the bargaining unit. The arbitrator found that any such changes must be collectively bargained for pursuant to the wage reopener provision in the CBA. The statutes the Board relied upon to execute the wage reduction were at variance with the terms in the CBA, and the CBA superseded these statutes. Thus, the arbitrator directed the Board to pay the members of the bargaining unit the difference between their negotiated wages and the uniform reduction for the contract year 2010-2011.

{¶9} Between September 27, 2011, and November 7, 2011, the Board and OAPSE made various filings with the trial court. Pertinent to the merits of this appeal, the Board sought an order from the trial court vacating the June 29, 2011 arbitration award pursuant to R.C. 2711.13, arguing that the arbitrator had exceeded her powers by issuing an award that: a) modifies the CBA by adding terms, an intent to supersede the applicable statues, which were not found in the express language of the CBA; b) is contrary to law; and c) does not draw its essence from, or have a rational nexus to, the CBA. Conversely, OAPSE sought an order confirming the arbitration award.

{¶10} On March 5, 2012, the trial court filed a journal entry sustaining the Board's application and vacated the arbitrator's award pursuant to R.C. 2711.10(D) and overruled OAPSE's application to confirm the arbitration award. The trial court made the following findings: "[T]he Arbitrator exceeded her powers by issuing an Award that: (A) modifies the collective bargaining agreement by adding terms not found in the express language of the agreement; (B) is contrary to law; and (C) does not draw its essence from, or have a rational nexus to, the collective bargaining agreement."

**Standard of Review of Arbitration Awards**

{¶11} OAPSE's brief lists ten assignments of error; however, the arguments in the brief are grouped into three sections which appear to combine some of the assignments of error. The following are the arguments set forth in the law and argument section of OAPSE's brief.

{¶12} "1. The trial court erred when it substituted its own analysis and findings for

that of the arbitrator in sustaining the Motion to Vacate and denying the Application to Confirm."

**{¶13}** "2. The Belmont County Court of Common Pleas erred when it found that Sections 3319.081 and 3319.082 of the Ohio Revised Code permit school districts to unilaterally reduce the salary paid to non-teaching employees provided that the reduction is pursuant to a uniform plan affecting all non-teaching employees of the district."

**{¶14}** "3. The Court erred when it found that Chapter 124 of the Ohio Revised Code is not applicable to the Employees in this Bargaining Unit."

**{¶15}** "4. The Court erred when it found that the collective bargaining agreement is silent with regard to the exclusion of R.C. 3319.081, R.C. 3319.082 and Uniform Salary Reductions and that the agreement expressly states that Chapter 124 shall not apply and that it doesn't contain any language about waiver, preemption or an intent to supersede the statutory right to implement a uniform salary reduction."

**{¶16}** "5. The Court erred when it found that language contained in R.C. 33119.082 [sic.] '…[S]uch salary shall not be lower then the salary paid during the preceding school year…' Also constitutes an unambiguous recognition by the Legislature that, the same salary paid, pursuant to the terms of the collective bargaining agreement (whether specifically included in a wage scale for the entire three (3) years of the agreement or whether referring to the amount actually paid during the preceding school year without reference to an exact amount in the Agreement) is subject to the unified plan reduction, even if wage rates were, in fact, set forth in the collective bargaining agreement."

**{¶17}** R.C. 2711.10 sets forth the limited circumstances under which a trial court may vacate an arbitrator's award. It provides in pertinent part: "In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if: * * * (D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

**{¶18}** The standard of review applied by an appellate court when reviewing a trial

court's decision to vacate an arbitration award is as follows:

> The trial court may not reverse an arbitrator's award simply because it disagrees with the arbitrator's findings of fact or interpretation of a contract. *Goodyear Tire & Rubber Co. v. Local Union No. 200* (1975), 42 Ohio St.2d 516, 520. Our standard, as an appellate court, is the same as that of the trial court. *Barnesville Exempted Village Sch. Dist. Bd. of Edn. v. Barnesville Assn. of Classified Employees* (1997), 123 Ohio App.3d 272, 274.

> Courts do not review claims of factual or legal error by an arbitrator as appellate courts regularly do in reviewing trial court judgments. *Southwest Ohio Reg. Transit Auth. v. Amalgamated Transit Union* (2001), 91 Ohio St.3d 108, 110, quoting *United Paperworkers Internatl. Union v. Misco, Inc.* (1987), 484 U.S. 29, 37-38. If they did, the public policy reasons behind arbitration would be lost. *Id.* at 520. The Ohio Supreme Court noted the policy behind arbitration and the limited review allowed by the courts:

> "Were the arbitrator's decision to be subject to reversal because a reviewing court disagreed with findings of fact or with an interpretation of the contract, arbitration would become only an added proceeding and expense prior to final judicial determination. This would defeat the bargain made by the parties and would defeat as well the strong public policy favoring private settlement of grievance disputes arising from collective bargaining agreements." *Goodyear Tire & Rubber Co.,* 42 Ohio St.2d at 520.

> "Once it is determined that the arbitrator's award draws its essence from the collective bargaining agreement and is not unlawful, arbitrary or capricious, a reviewing court's inquiry for purposes of vacating an

arbitrator's award pursuant to R.C. 2711.10(D) is at an end." *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, at paragraph two of the syllabus, superseded by statute on other grounds as stated in *Cincinnati v. Ohio Council 8, AFSCME* (1991), 61 Ohio St.3d 658. "An arbitrator's award departs from the essence of a collective bargaining agreement when: (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement." *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp. Assn., Local 11, AFSCME, AFL-CIO* (1991), 59 Ohio St.3d 177, at the syllabus.

*Jefferson Cty. Sheriff v. Fraternal Order of Police*, 7th Dist. No. 09-JE-2, 2009-Ohio-6758, ¶33-36.

### CBA Preemption of Statutory Salary Provisions

The dispute in this case centers upon whether R.C. Chapter 124 or R.C. 3319.081 (contracts for nonteaching employees) and R.C. 3319.082 (notice of annual salary) controls resolution of the dispute, rather than Article 24 of the CBA, addressing wages for the nonteaching employees, which provides in pertinent part:

> 24.1 <u>WAGES</u>
> Effective January 1, 2009 – no increase
> Effective January 1, 2010 – wage re-opener
> Effective January 1, 2011 – wage re-opener
>
> 24.2 <u>Salary Schedules</u>
> See Exhibits A, and B attached hereto which include the increases specified in Section 24.1 above.

**{¶19}** The CBA includes a salary schedule entitled "MARTINS FERRY CITY SCHOOL DISTRICT NON-TEACHING SALARY SCHEDULE EFFECTIVE JANUARY 1, 2009." This salary schedule sets forth the wages for each classification with steps based

upon the number of years of service.

{¶20} OAPSE first argues that R.C. Chapter 124, which contains the civil service statutes, applies to the nonteaching employees of the school district, not R.C. 3319.081 and R.C. 3319.082; the latter statutes applying where R.C. Chapter 124 does not apply. OAPSE contends that the civil services chapter applies to the nonteaching employees because "'[c]ivil service' includes all offices and positions of trust or employment in the service of the state and in the service of the counties, cities, city health districts, general health districts, and city school districts of the state"; and the Martins Ferry City School District is a city school district. R.C. 124.01(A). It concludes that R.C. 124 applies to city school districts unless otherwise collectively bargained and here, the CBA provisions demonstrate that R.C. 124 applies to the bargaining unit.

{¶21} In response, the Board contends that OAPSE did not oppose the Board's argument that R.C. 3319.081 and R.C. 3319.082 apply to the bargaining unit or oppose the argument that R.C. 124 does not apply in its memorandum contra to the Board's motion to vacate. The Board thus argues that OAPSE has waived this argument because it did not raise it before the trial court. However, OAPSE attached its briefs from the arbitration hearings to the application to confirm that it filed with the trial court. In these briefs, OAPSE contends that R.C. 124, not R.C. 3319.081 and R.C. 3319.082, applies to the bargaining unit. Thus, OAPSE did raise this issue before the trial court.

{¶22} During the arbitration hearing, the Board presented testimonial evidence from the former treasurer and the former superintendent of the school district that when the parties were negotiating the CBA, there was never any discussion of the civil service laws because no civil service commission operated in the City of Martins Ferry, and that R.C. 124 had never been applied to the bargaining unit other than for a just cause standard as specified in the CBA. In her opinion, the arbitrator found:

> Dating back to 1984, OAPSE and the District have been parties to a Collective Bargaining Agreement setting forth the terms and conditions of employment for classified employees of the school district * * *. Undisputed

evidence elicited by the Board establishes that since then and to the present neither civil service law nor the provisions of Chapter 124 have ever been applied to employees of the School District other than for a just cause standard * * *.

**{¶23}** The trial court noted the arbitrator's findings on R.C. 124 and concluded that R.C. 124 does not apply to the bargaining unit.

**{¶24}** The arbitrator made a factual and legal determination that R.C. 124 does not apply to the school district employees. "[A]n arbitration award is not subject to reversal simply because the reviewing court disagrees with the arbitrator's findings of fact. Thus, generally, appellate review does not extend to the merits of an arbitration award, i.e. perceived factual or legal error, without a showing of material mistake or extensive impropriety." (Citation omitted.) *Handel's Ent., Inc. v. Wood*, 7th Dist. Nos. 04 MA 238, 05 MA 70, 2005-Ohio-6922, ¶30. The record supports the arbitrator's findings on the issue of whether R.C. 124 applies, and OAPSE did not provide further evidence that R.C. 124 applies to the school district. Thus, the arbitrator did not make a material mistake or commit extensive impropriety in this determination.

**{¶25}** OAPSE further contends that the trial court erred in determining that the arbitrator exceeded her authority and the trial court improperly substituted its interpretation of the CBA terms for the arbitrator's interpretation.

**{¶26}** R.C. 4117.10(A) governs the relationship between provisions of a collective bargaining agreement and applicable statutes, and provides in relevant part:

An agreement between a public employer and an exclusive representative entered into pursuant to this chapter governs the wages, hours, and terms and conditions of public employment covered by the agreement. * * * Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees.

**{¶27}** The arbitrator determined that the CBA contains specific wage provisions effective for three years, a wage reopener provision that provides a process to modify the salary schedule, and a provision in Article 26 stating that the CBA sets forth the "full and complete agreement between the Board and the Union on all negotiable issues * * *." Based upon these findings, the arbitrator concluded:

Arguing that there is no language in the Agreement expressly preempting the application of Ohio Revised Code 3319.081 and 3319.082, the Board asserts it can make the unilateral change now in contention. To sustain such an argument, however, this Arbitrator would need to completely negate the Article 24 commitment to engage in a wage re-opener should a change in wages be sought by either party. To the extent the parties have expressly agreed, "The Arbitrator shall have no power to add to, subtract from, or alter any terms of this Agreement, or render an award contrary to law," (Joint Exhibit 1, Article 4, Section 4.4), the Arbitrator is precluded from relieving the Board of the obligation to engage in a wage re-opener to achieve wage concessions.

In the case at hand the Arbitrator finds the Board reliance upon its alleged statutory claim is misplaced. Insofar as this Agreement is very specific as to wages, state law pertaining thereto is inapplicable. Since the contract is clear and unambiguous on the issue, the Board is without recourse to state law. Although the Board contends the salary schedule is too "general" to preempt the cited legislation, the Arbitrator cannot agree. If anything, the salary schedule is specific setting forth seventeen (17) classifications, and corresponding wages. O.R.C. Sections 3319.081 or 3319.082 are not specifically excluded because there is no need to do so. The Agreement not only makes reference to specific wages but includes the entire understanding of the parties pertaining thereto. Without negotiation, these

wages cannot be changed, modified, reduced or increased. * * *

**{¶28}** The Board argued in its motion to vacate the arbitration award that the arbitrator exceeded her authority because her award added a waiver of the statutory right to impose a uniform salary reduction when such waiver was not expressly included in the terms of the CBA.

**{¶29}** The trial court agreed with the Board and found that the CBA does not contain any language addressing the statutes at issue nor does it contain any language about a waiver or intent to supersede the right to implement a uniform salary reduction. In contrast, the court noted that where the parties intended to supersede other statutory rights, they specifically stated that intent in the CBA. "The fact that the parties set forth wage rates for each of the three (3) years of the Agreement **does not express an intent to supersede the statutory rights** to implement a uniform salary reduction." The trial court concluded that **"Arbitrator Johnson's determination that the fact that the parties included a salary schedule in the Agreement *impliedly* means that they agreed to supersede state law concerning wages is contrary to law."** (emphasis in original).

**{¶30}** In its analysis of the arbitration award, the trial court relied upon *State ex rel. Ohio Assn. of Pub. School Emp./AFSCME, Local 4, AFL-CIO v. Batavia Local School Dist. Bd. of Edn.*, 89 Ohio St.3d 191, 2000-Ohio-130, 729 N.E.2d 743, where the Ohio Supreme Court held: "In order to negate statutory rights of public employees, a collective bargaining agreement must use language with such specificity as to explicitly demonstrate that the intent of the parties was to preempt statutory rights." *Id.* at syllabus.

**{¶31}** In *Batavia*, the school board abolished the positions of certain nonteaching employees and then laid off those employees. The board then contracted with a private company to perform the same work as previously performed by the laid off employees. *Id.* at 193. The collective bargaining agreement contained provisions allowing the board to lay off employees and to abolish positions; however, R.C. 3319.081 provided the nonteaching employees with statutory protections by allowing termination of employment

contracts only for enumerated reasons in the statute. *Id.* at 192, 195.

{¶32} The Court held that the layoff provision in the collective bargaining agreement was a general layoff and recall provision which did not address the employees' statutory rights provided in R.C. 3319.081. The Court reasoned that if the parties had mutually intended to preempt the job security provisions of the statute, they could have specified that intent in the agreement. *Id.* at 196-197. Thus, the Court concluded that because the parties' agreement did not specifically permit the board to lay off its employees and contract with a private company to perform the same services, the employee rights in R.C. 3319.081 prevailed over the collective bargaining agreement. *Id.* at 198.

{¶33} Here the trial court and the Board interpreted the CBA to contain a general wage provision that made no specification about a uniform wage reduction. The trial court noted that the parties specifically stated their intent to preempt certain statutory provisions in another part of the CBA, yet in Article 24 addressing wages the CBA made no mention of the statutes at issue. Furthermore, the court interpreted the statutes as contemplating a contract setting forth a salary for the employees to which the uniform wage reduction would apply. Thus, the trial court found that the CBA did not contain specific language that demonstrated the intent of the parties to preempt the statutory uniform wage reduction provisions.

{¶34} However, the arbitrator interpreted the CBA as specifically providing a wage schedule for the nonteaching employees and a negotiated method to modify these wages via the wage reopener provision. While the trial court's interpretation focuses only on the wage schedule, the arbitrator interpreted the wage schedule and the wage reopener together which constitutes the entire agreement between the parties on wages and the method to modify wages. Because the parties specifically provided for a method to alter the wage schedule, the arbitrator concluded the CBA superseded the statutes at issue.

{¶35} The arbitrator also referenced an Attorney General Opinion conclusion that a collective bargaining agreement must expressly address statutory employee benefits and statutory limitations on employee rights in order to preempt either. 2009 Ohio

Atty.Gen.Ops. No. 2009-009 at 18. The Ohio Attorney General concluded:

[I]f a particular feature or component of a benefit, including a limitation thereon, is governed by statute, the statutory feature or component will apply to employees covered by a collective bargaining agreement, unless the agreement explicitly and directly excludes that particular feature or component or includes specific language that otherwise varies that feature or component. If the agreement does not exclude, or otherwise address the feature or component, then the agreement "makes no specification about" the matter, and employees are subject to the applicable statutory provisions. If the agreement does exclude, or makes other provision for, the feature or component, then the agreement and state law conflict, and the agreement prevails.

*Id.*

**{¶36}** The arbitrator relied upon this analysis to conclude that the wage reopener in the CBA is specific language that varies the statutory wage reduction provision. The arbitrator reasoned that for 2010 and 2011, in order for the Board to reduce the employees' wages, it must utilize the wage reopener. This interpretation of the CBA is reasonable and accords with the reasoning in *Batavia* because by "varying" the statute, the CBA specifically addresses the matter such that it demonstrates the parties' intent to preempt the applicable statutes.

**{¶37}** The Ohio Supreme Court has instructed:

When a provision in a collective bargaining agreement is subject to more than one reasonable interpretation and the parties to the contract have agreed to submit their contract interpretation disputes to final and binding arbitration, the arbitrator's interpretation of the contract, and not the interpretation of a reviewing court, governs the rights of the parties thereto.

*City of Hillsboro v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 52 Ohio St.3d 174, 556 N.E.2d 1186 (1990), at syllabus.

**{¶38}** Contrary to the trial court's findings, the arbitrator was interpreting the terms of the CBA as specific enough to demonstrate the parties' intent to preempt the statutes at issue, rather than adding terms to the agreement. Since the arbitrator interpreted the CBA, rather than adding terms to it, and that interpretation was reasonable, the trial court erred in substituting its own interpretation for that of the arbitrator. Accordingly, the trial court erred in reversing the arbitration award, and OAPSE's argument is meritorious.

**{¶39}** Upon review, OAPSE's arguments are meritorious in part. This court will not disturb the arbitrator's decision that R.C. Chapter 124 did not apply to the employees of the school district. But because the arbitrator's award draws its essence from the collective bargaining agreement, which manifested the intent of the parties for the CBA to preempt statutory provisions relative to employee wages, the trial court erred in substituting its judgment for that of the arbitrator and vacating the arbitration award. Accordingly, the judgment of the trial court is reversed, and the arbitrator's award is reinstated.

Donofrio, J., concurs.

Vukovich, J., concurs.

APPROVED:

_____

JUDGE MARY DeGENARO